## THEO ZICKRICK v. FRED P. STRATHERN.
## DORA KENYON v. SAME.[1]

December 5, 1941.

Nos. 32,986, 32,987.

*Faegre, Benson & Krause, Paul J. McGough,* and *Wright W. Brooks,* for appellant.

*Murphy, Johanson & Winter,* for respondents.

[1]Reported in 1 N. W. (2d) 134.

STONE, JUSTICE.

Two cases, consolidated for trial, with verdicts for defendant. Plaintiffs' motions for new trial were granted solely because of an instruction held error. Defendant appeals.

Paved, three-lane trunk highway No. 5 extends westerly from Fort Snelling. It is intersected at right angles by roads which are projections southward of Minneapolis streets. One of them is Penn avenue. The adjacent terrain is level and the view unobstructed except in respects to be mentioned later.

At about five p. m., October 14, 1939, plaintiffs, as guests of Mrs. Jessie Smith, were passengers in the car driven by her as it proceeded over Penn avenue from the south and into the intersection with No. 5. There defendant's car, going west on No. 5, was driven into it head on.

Defendant admits a speed of 40 to 45 miles an hour. Where he was traveling, the highway was zoned for a top speed of 60 miles per hour.

The southeast corner of the intersection is occupied some distance back from the roads by a tavern. There is testimony that in the space between it and the corner four or five automobiles were parked at the time. If so, the jury could well have considered that defendant's vision of cars approaching from the south on Penn avenue was somewhat obscured.

Traffic on the trunk highway was heavy. As defendant, in the north lane, approached the intersection, there were at least three cars coming from the west on the south lane. Their leader was a stake body truck. Following were two other cars, the first driven by Mr. Addiss, and the third by Mr. Eastman.

While, quite inexcusably, it is argued to the contrary here, there was evidence, plenty of it, from which the jury could easily have concluded that although the conventional trunk highway stop sign on the right side of Penn avenue and just south of the highway required it to do so, the Smith car, in which plaintiffs were riding, did not stop. There is evidence that it approached the highway and attempted to cross at a speed that was increasing. It

went onto the highway closely behind the stake body truck, which passed on eastward. Had it not been for quick action by Mr. Addiss in turning his car sharply to the right, off the highway and onto Penn avenue, he might have collided, the jury could well have believed, with the Smith car. The action of Addiss caused Mr. Eastman, just behind him, in like fashion suddenly to check his speed, take to the south shoulder of the highway, and to Penn avenue.

In the meantime, when the Smith car was well into the north lane, the collision with defendant's vehicle occurred.

■ The supposed error for which a new trial was granted was the submission to the jury, at defendant's request, of the emergency rule.

That rule is but a special application of the general standard of reasonable care. It requires a jury to consider the fact of sudden peril as a circumstance in determining the reasonableness of a person's response thereto. Prosser, Torts, p. 242; Restatement, Torts, § 296. As correctly stated in the instruction, it is that "one suddenly confronted by a peril through no fault of his own, who in an attempt to escape does not choose the best or safest way, should not be held negligent because of such choice unless it was so hazardous that the ordinarily prudent person would not have made it under similar conditions." The rule is applicable only if it be first determined that there existed a real peril (Naylor v. McDonald, 185 Minn. 518, 241 N. W. 674) and that the negligence of the party seeking to invoke it did not contribute thereto. Ind v. Bailey, 198 Minn. 217, 269 N. W. 638; Zobel v. Boutelle, 184 Minn. 172, 238 N. W. 49; Anderson v. Gray, 206 Minn. 367, 288 N. W. 704. In this case the existence of these conditions precedent were questions of fact.

Our confident holding is that the case was one for submission of the instruction. The evidence, much of it coming from disinterested eyewitnesses, presents a moving picture from which the jury could reasonably have concluded that defendant found him-

self suddenly in the midst of an emergency to the creation of which he had not negligently contributed.

It is highly important that, as against the Smith car, the jury was justified in finding that defendant had the right of way. Defendant did not see the Smith car until it reached the south edge of the pavement. He immediately applied his brakes. He assigns what the jury could have considered reasonable explanation for his not seeing the car earlier, in that his southward vision was obstructed as indicated. He had a right to assume, even though he did so instinctively, that no car coming from the south would thrust itself northward through the eastbound traffic in the manner in which much evidence indicates the Smith car did.

We cannot agree that defendant's failure to apply his brakes before he saw the Smith car was, under all the circumstances, so unreasonable as to compel a finding of negligence contributing to the creation of the emergency.

In Carlson v. Sanitary Farm Dairies, Inc. 200 Minn. 177, 273 N. W. 665, the emergency rule was applied in a similar situation. Plaintiffs seek to distinguish it on the ground that there the "situation was not only startling and surprising, but wholly unexpected and unusual." The peril which confronted this defendant (considered apart from the acts, negligent or otherwise, which created it) was, to our minds, no less sudden and unusual. See Packar v. Brooks, 211 Minn. 99, 300 N. W. 400.

■ The argument for plaintiffs, insofar as it is based upon Mason St. 1940 Supp. § 2720-198(a), takes a too narrow view of the duty imposed upon a motorist to stop before entering a through highway. The statute demands not only that he shall stop but also that he "shall yield the right of way to other vehicles * * * which are approaching so closely on said thru highway as to constitute an immediate hazard." Only after doing all that, that is, stopping and yielding the right of way, not only to cars on the intersection at the moment but also those which are so close as to make the hazard "immediate," may the entering driver proceed, and other drivers approaching the intersection be

under duty to yield to the one who has stopped and is then entering. As the Smith car entered the highway, defendant was so close as to make the hazard very "immediate." That was proved by the event.

Orders reversed.