# EDWARD VASATKA AND ANOTHER v. ROBERT G. MATSCH AND ANOTHER.[1]

March 3, 1944.

Nos. 33,590, 33,591.

[1]Reported in 13 N. W. (2d) 483.

*Bundlie, Kelley & Finley,* for appellants.
*Ben R. Toensing,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Plaintiffs brought actions against defendants for damages arising out of an automobile collision. The cases were consolidated for trial, the jury returning verdicts for defendants. Subsequently, plaintiffs' motions for new trials were denied. Judgments were entered, following which plaintiffs, with the court's consent, moved to vacate the same and for new trials on the ground, among others, of newly discovered evidence. The court thereupon ordered the judgments vacated and granted plaintiffs new trials. From such orders these appeals are taken.

The facts are as follows: On September 10, 1941, plaintiff Edward Vasatka was driving his automobile west toward Minneapolis from Hastings, on paved highway No. 55, after dark, about 8:30 p. m. Defendant Robert Matsch, accompanied by his mother, Mildred Matsch, and his aunt, Dorothy Nesbitt, was driving east on said highway toward Hastings. The weather was clear and the pavement dry. The highway was "zoned" for 50 miles per hour at the time in question. About a mile west of Hastings, Robert, in attempting to pass an unlighted hayrack and team of horses driven by one Draeger, also traveling east on said highway, crossed over onto the north side of the center of the highway "a couple of feet." In consequence, the Matsch car collided with the westbound Vasatka car, causing damages to the latter and injuries to Vasatka and his wife, Florence, a passenger, for which the Vasatkas brought these actions.

Title to the automobile driven by defendant Robert Matsch was in the name of his brother, defendant Loren Matsch. The latter denied ownership thereof and asserted title had been placed in his name merely as a favor to his brother Robert, who at the time the car was purchased was under the age of 18 and whose parents

would not sign the contract purchase agreement for him nor consent to register the car in the name of either.

The parents of defendants, to wit: Louis and Mildred Matsch, also commenced actions against them and against Edward Vasatka, for damages and injuries arising out of said accident. Their cases were tried subsequent to the cases here involved and after the court's denial of plaintiffs' first motions for new trials herein. In the parents' actions the jury likewise returned verdicts in favor of all defendants.

Plaintiffs' second motions for new trials were in part based upon newly discovered evidence, which, they asserted, was discovered as a result of the trial of the parents' actions. In this connection, plaintiffs claimed that in the trial of the Vasatka cases Robert Matsch testified that he was traveling between 45 and 50 miles per hour; that in the second actions, brought by his parents, his father, Louis Matsch, testified that following the accident, on two separate occasions, Robert had advised him that the accident was caused in part by his speed at the time—that he had stated "he was driving awful fast and that he could not avoid hitting either the hayrack or this [the Vasatka] car"; that still later, while he was riding with Robert in another car and requested him to reduce his speed of 60 miles per hour, Robert had replied: "If you think this is fast, you should have been with me the night of the accident."

Later in the second actions, when Robert was questioned about these statements, he admitted making them, but reiterated his statements made in the trial of the Vasatka actions that his speed was between 45 and 50 miles per hour at the time of the accident, and asserted that the aforesaid statements to his father were made in the light of his best judgment that his speed at the time of the accident had been between 45 and 50 miles per hour.

In the second actions, in response to special interrogatories submitted to it, the jury specifically determined that Robert Matsch rather than Loren Matsch was the owner of the Matsch car at the time of the accident.

Plaintiffs' motions to vacate the judgments and for new trials were based on their claim that at the time of trial of the second actions plaintiffs learned they "could have proved by Louis B. Matsch, one of the plaintiffs, and by the admissions of Robert G. Matsch upon the witness stand" that said Robert Matsch had testified falsely in the trial of this cause with respect to the following particulars:

"(a) That he was driving at 45 or 50 miles an hour at the time of the accident.

"(b) That while driving at said rate of speed a hayrack loomed up in front of him and he turned out to pass to the left of it.

"(c) That he turned to the left of the center of the highway to avoid smashing into the back of the hayrack."

Presumably subparagraphs (b) and (c) were dependent upon whether there was additional evidence as to excessive speed, since otherwise exactly the same account of the points covered by these paragraphs was related by Robert in both actions.

In their motions, plaintiffs also claimed that the court erred in instructing the jury as follows:

"One suddenly confronted by a peril through no fault of his own who in an attempt to escape does not choose the best or safest way shall not be held negligent because of such choice unless it was so hazardous that an ordinarily prudent person would not have made it under similar circumstances.

"The burden of proving that a driver being upon the wrong side of the highway was not due to any negligence or lack of care on his part but because of an emergency which justifies his position on the wrong side of the highway, that is upon the defendant driver."

As a part of the orders granting plaintiffs' motions, the court's memorandum stated:

"Perjury is abhorrent to any court.

"* * * if the jury * * * had knowledge that Robert was going

to testify in the second cases under oath to a different state of facts, would the jury have reached the verdict which it did?

\* \* \* \* \*

"'\* \* \* the court is of the opinion that the plaintiff is entitled to an order vacating and setting aside the judgment \* \* \* and for an order \* \* \* granting \* \* \* a new trial on the grounds of material evidence newly discovered which \* \* \* would tend to prove perjury. That a new trial will likely change the results."

On appeal, defendants' principal contentions are: (1) That since the alleged newly discovered evidence did not relate to the title of the automobile and since, in addition, the jury's special verdicts in the second actions foreclosed the question of ownership of the car, it was error to grant new trials as to defendant Loren Matsch; (2) that the trial court abused its discretion in ordering new trials on the ground of newly discovered evidence, since no proper showing was made that such evidence could not have been obtained prior to the first trials and since such evidence did not differ from the evidence adduced at the first trials or in any respect indicate perjury; and (3) that the court erred in instructing the jury on the "sudden emergency" doctrine as above indicated.

■ Defendants assert that since the alleged newly discovered evidence could have no bearing on the ownership of the automobile in question it was error for the court to grant new trials as to defendant Loren Matsch. In view of the basis of our decision as hereinafter outlined, it will not be necessary for the court at this time to pass upon this issue.

■ The court's orders granting new trials herein were based upon the ground of newly discovered evidence tending to establish perjury. Defendants urge that plaintiffs have failed to make a showing of due diligence in connection with the evidence now claimed to be newly discovered. The law is well settled that before a new trial can be granted on the ground of newly discovered evidence the party seeking the same must show affirmatively by his affidavits on the motion not only that such evidence was not discovered until after trial, but also that it could not have been discovered before

trial by the exercise of reasonable diligence. 5 Dunnell, Dig. § 7127, and cases cited. In this connection, he must state with particularity what he did to discover such evidence before trial so the court may determine whether he has exercised the required diligence. Here, from the nature of the circumstances involved and the manner in which such evidence arose, it would seem that plaintiffs' showing on the motion was sufficient to indicate reasonable diligence. Their affidavits and those of their counsel explain fully why they had been unable to locate the evidence prior to the first trial. In addition, there is attached to said moving papers the verdicts in the second actions, together with a complete transcript of the testimony therein. The nature of the evidence, as well as the relationship of the parties, precluded any further affidavits. The submission of the entire transcript in the second actions would seem to supply any deficiency in this respect, and we hold that plaintiffs have made a sufficient showing on the question of diligence. *Id.* § 7127, and cases cited.

■ As herein stated, the court vacated the judgments and ordered new trials upon the specific ground that the newly discovered evidence tended to establish perjury. This was an appealable order. Kruchowski v. St. Paul City Ry. Co. 195 Minn. 537, p. 540, 263 N. W. 616, 265 N. W. 303, 821. The order did not expressly state that the new trials were granted because the verdicts were not justified by the evidence. Minn. St. 1941, § 547.01 (Mason St. 1940 Supp. § 9325). Accordingly, the case does not fall within the rule laid down in Hicks v. Stone, 13 Minn. 398 (434), that "an order granting a new trial for insufficiency of evidence" will not be reversed unless "the evidence is manifestly and palpably in favor of the verdict."

This being true, the scope of our review here is limited to determining whether or not proper discretion was exercised in making the orders here under attack. As stated, the trial court limited the ground for such orders to newly discovered evidence tending to establish perjury on the part of Robert Matsch. We are hence required to examine the record and transcripts in both actions to

determine whether or not there is perjury or evidence thereof on the part of Robert Matsch. In the first actions, Robert Matsch testified that his rate of speed at the time of the accident was from 45 to 50 miles per hour. He had made the same statement to the insurance adjusters prior to the actions. In the second actions, he stated that he was not aware how fast he was going, but again testified that in his opinion it was from 45 to 50 miles per hour, notwithstanding that such testimony weakened the cases of his parents, who apparently were hopeful of compelling an admission from him that his speed was in excess of the rate specified by him.

Certainly there was no evidence of perjury in his testimony in the first actions relative to the admissions made to his father as outlined herein, for he was asked nothing with reference thereto and hence could not have testified falsely thereon. In automobile collision cases, it is generally understood that a witness can seldom give a detailed and accurate statement of the incidents and circumstances surrounding the same. Statements as to speed, relative positions of the automobiles, points of contact, and like matters are usually merely recollections of momentary impressions recalled long after the accident involved. When it is sought to hold a witness to minute accuracies and details in connection therewith, if his responses to such questions vary to some extent or are otherwise vague or somewhat contradictory, it cannot be said that the witness thereby is deliberately falsifying in his testimony. Here, the record indicates that the witness "leaned backward" in endeavoring to answer the questions correctly, and in fact gave the highest estimates of his speed of any of the witnesses called. He related frankly and fairly that the accident had happened at a time when he was partially on his left-hand side of the center of the highway. All his statements were corroborated—many by adverse witnesses. The jury had all this evidence before it, and there is nothing in the record of the second trials insofar as the testimony of Robert Matsch is concerned which might cause a different result were a new trial granted. We hold that there was no basis

for the exercise of discretion in ordering a new trial for the reasons stated, and hence that such orders must be reversed.

■ The final remaining ground urged for a new trial relates to the court's instruction on the emergency doctrine. All the circumstances here indicate that both plaintiff Edward Vasatka and defendant Robert Matsch at the time of the accident were confronted with a sudden emergency occasioned by the unlighted hayrack occupying a portion of the highway at the time of the accident. Defendants presented evidence from which it might be concluded that plaintiff Edward Vasatka's speed was excessive and that such speed or his failure to yield to the right to permit Robert's passage was the proximate cause of the accident. Plaintiffs contend that Robert should have either stopped or driven more closely to the hayrack to avoid the collision. However, both were acting under the pressure of a sudden emergency, and it could scarcely be said as a matter of law that their failure to act as suggested constituted negligence. Neither can it be said as a matter of law that Robert found himself in a position of peril solely because of his own negligence so as thereby to eliminate the application of the emergency doctrine to his conduct. The jury might well conclude that Robert had been placed in imminent peril solely by the negligence of the driver of the hayrack in failing to equip his vehicle with lights or reflectors visible for a distance of 500 feet as provided by Minn. St. 1941, § 169.55 (Mason St. 1940 Supp. § 2720-241). See also § 169.48 (§ 2720-234). We feel that the court's instructions on the "sudden emergency" doctrine were proper and applicable to the facts presented in this case. Smith v. Carlson, 209 Minn. 268, 296 N. W. 132; Schmitt v. Emery, 211 Minn. 547, 2 N. W. (2d) 413, 139 A. L. R. 1242.

Orders reversed with directions to reinstate verdicts and judgments.