## LARS G. OLSON v. BEN ANDERSON.[1]

June 20, 1947.

No. 34,444.

[1]Reported in 28 N. W. (2d) 66.

A. R. *English,* for appellant.
*Fosnes & Severson,* for respondent.

LORING, CHIEF JUSTICE.

This case comes here on appeal from an order denying defendant's motion for a new trial. Recovery was sought for personal injuries and damage to plaintiff's automobile resulting from a collision with defendant's car, which occurred at the intersection of a county road in Yellow Medicine county with a town road approximately ten miles south and two miles west of the town of Clarkfield. Defendant counterclaimed for damage to his car. The county road runs north and south at the point of the intersection and the town road east and west. There is a stop sign against the town road at the intersection here involved. The view between the county road just north of the intersection and the town road just east of it is obstructed by a dense grove which extends some hundreds of feet from the corner of the intersection in both directions, but farthest to the north. The collision occurred about 8 a. m. of October 6, 1945. Plaintiff was riding in the back seat of his Ford coach, which was being driven by his son Milford southward toward the intersection on the county road. They were going to the farm of another son, who expected to fill a silo on that day.

Defendant approached the intersection from the east. He was aware of the stop sign at the intersection, but admits that he did not stop, although he claims to have reduced speed and changed gears between the stop sign and the traveled part of the county road. At a point about 185 feet east of the intersection, he was traveling from 30 to 35 miles an hour, in the opinion of an eyewitness. The

dense grove at the northeast corner of the intersection obstructed the view of each driver toward the other. The collision occurred in the northwest quarter of the intersection, plaintiff's car striking defendant's at about the middle. Plaintiff's driver testified that immediately upon seeing defendant project his car into the road in front of him he applied his brakes and sought to avoid the collision. Defendant asserted that he did not see plaintiff's car until it was within ten feet of him. The only reasonable inference to be drawn from this statement is that defendant did not look for approaching cars which constituted an immediate hazard.

At the close of the trial the court directed a verdict for plaintiff upon the theory that as a matter of law defendant was guilty of negligence which was the proximate cause of plaintiff's injuries, and that there was no evidence sufficient to go to the jury that plaintiff's driver was negligent. Therefore, the only question submitted to the jury was the amount of damages which plaintiff should recover.

■  The evidence of defendant's negligence we regard as conclusive. He was aware of the stop sign and chose to ignore it. By doing so, he violated his duty to stop, look for, and yield the right of way to cars within the zone where they constituted an immediate hazard. M. S. A. § 169.20, subd. 3.

" 'It was not enough to stop at the "Stop" sign. It was his duty to stop and to observe where stopping and observing would be efficient and meet the purpose of the "Stop" warning.'

"* * * it is the duty of one approaching an arterial highway to stop at a point * * * where one may efficiently observe traffic approaching on the arterial highway." Svenson v. Vondrak, 200 Wis. 312, 316, 227 N. W. 240, 242.

Under the circumstances disclosed in the record, defendant's failure to do so was unjustified and negligent and the proximate cause of the collision. There was nothing in the record which rebutted the prima facie case of negligence made out by his violation of the statute. Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 113, 5 N. W. (2d) 492, 496.

■ The remaining question for decision is, therefore, whether there was sufficient evidence of negligence on the part of the driver of plaintiff's car to require the submission of that issue to the jury. Milford was in his father's employ, and they were on a mission planned by plaintiff to assist another son. Hence, there was no bailment of the car to Milford, and plaintiff was not a guest passenger. The estimated speed of plaintiff's car along the county road was 35 miles an hour as it approached the intersection, although there was opinion testimony that some half mile back his car had been traveling at approximately 50 miles an hour. The prima facie speed limit was 60 miles per hour. M. S. A. § 169.14, subd. 2. There was also the claimed admission on the part of Milford that he was going 45 miles an hour into the intersection. Both drivers were familiar with the intersection and knew that it was protected against traffic on the town road by a stop sign. The driver upon a highway which he knows to be protected by stop signs may assume, until he sees otherwise, that drivers approaching an intersection so protected will heed the stop sign and not only stop, but look for and yield the right of way to other vehicles which are approaching so closely on the through highway as to constitute an immediate hazard. § 169.20, subd. 3. In short, he may assume ordinary care on the part of such drivers until he observes the contrary. Zickrick v. Strathern, 211 Minn. 329, 332, 1 N. W. (2d) 134, 136. As said in that case, the approaching car on the through highway was a very immediate hazard, which the driver on the cross road should have taken time to observe and to which he should have yielded the right of way. Here, plaintiff's driver, until he saw otherwise, might reasonably assume that defendant would stop, look, and yield the right of way. In the light of the present statute, which differs from previous ones requiring only a stop, we think that plaintiff's driver, knowing of the stop sign, might have reasonably assumed, notwithstanding he could not see to the east, that he was safe in approaching and driving through the intersection at even 45 or 50 miles an hour. We consider that he was free from negligence as a matter of law.

Order affirmed.