LESSING E. SCHLEUDER v. HENRY SOLTOW (ALSO DESIGNATED SOLTOU).[1]

June 12, 1953.

No. 36,023.

[1]Reported in 59 N. W. (2d) 320.

*Sexton, Tyrrell & Jardine,* for appellant.
*Gislason & Reim,* for respondent.

DELL, JUSTICE.

Defendant appeals from an order denying his alternative motion for judgment notwithstanding the verdict or a new trial.

Trunk highway No. 22 is a two-lane, east-and-west, tarvia, through highway. Acoma Church Road is a gravel, north-and-south highway. The highways intersect at a point four or five miles west of Hutchinson, Minnesota. Trunk highway No. 22 is protected at the intersection by two stop signs on the Acoma Church Road, one on either side of the trunk highway, each located several feet back from the tarvia, the exact distance not being disclosed by the record. At the northeast corner of the intersection, at the time of the accident, was a field of standing corn.

On October 13, 1951, at about four o'clock in the afternoon of a clear day, defendant, 72 years of age, accompanied by his wife, was driving his Chevrolet automobile in a southerly direction on the Acoma Church Road approaching the intersection of said highways. It was defendant's intention to continue south on the Acoma Church Road. He was familiar with the intersection and knew of the presence of the stop signs. He stopped his automobile before entering the intersection, but the place where he stopped is in dispute.

Defendant testified that having stopped he looked to his right and observed that the highway was clear. He then looked to his left and observed two automobiles just having come out of a curve on the trunk highway east of the intersection. One it developed was driven by the witness, Frances Kufrin, and it was followed by plaintiff's automobile. Defendant saw the plaintiff's automobile overtake and pass the Kufrin automobile and then turn back into its proper lane on the highway. When he saw the Kufrin and plaintiff's automobiles to his left, he estimated their distance at "Maybe a thousand feet or so." In cross-examination he admitted that the distance might have been less. Defendant made no effort to estimate the speed of plaintiff's automobile and expressed no opinion as to how fast it was going, but he said that he concluded that there was sufficient time for him to cross through the intersection in front of the plaintiff's automobile.

While defendant was driving through the intersection at approximately 10 or 15 miles an hour, a collision between plaintiff's and defendant's automobiles occurred. After starting across the intersection defendant paid no further attention to plaintiff's automobile and did not see it again until it was approximately 50 feet from the point of collision, whereupon defendant applied his brakes. Whether, at the time of the collision, his automobile had come to a stop or was still in motion is in dispute.

Plaintiff was seriously injured in the accident. He was rendered unconscious and remained so until the following December. As a result of the accident he suffered a retrograde amnesia and was unable to give any testimony at the trial concerning the happening of the accident or the events preceding it. Plaintiff, however, produced two eyewitnesses, Frances Kufrin and Virginia Beihoffer, who were proceeding in a westerly direction on the trunk highway in a Chevrolet automobile driven by Miss Kufrin. From their testimony it appears that, after they had passed the curve east of the intersection and were on a straight stretch of road, plaintiff overtook them from the rear and passed them. They estimated the speed of their automobile at that time at 45 miles an hour and the

speed of plaintiff's Chrysler automobile at 60 miles an hour. After plaintiff's automobile passed theirs, it returned to its own lane; and thereafter they observed that, when about two blocks or less from the intersection, it turned back into the left lane of the trunk highway. At that time there were no other automobiles on the highway.

The girls next observed defendant's automobile approaching the intersection at 10 or 15 miles an hour. Miss Beihoffer testified that when she first noticed it was "just coming out back of the corn field * * *." Miss Kufrin testified that, when she first noticed defendant's automobile, the two front wheels were on the highway. Both testified that when they first saw defendant's automobile it was in motion and that it continued in motion until the collision. At the time of the collision they were approximately two blocks from it. They estimated the speed of their automobile at the time of the collision at 45 miles an hour and the speed of plaintiff's automobile at the time of the collision at 60 miles an hour.

Defendant claimed that at the time of the collision the front part of his automobile had crossed over the tarvia of the trunk highway and was on the graveled road. Miss Kufrin testified that at the time of the collision defendant's automobile was nearly across the tarvia portion of the trunk highway. At the time of the collision plaintiff's automobile was south of the center of the trunk highway either just off the south edge of the tarvia on the gravel or partly on the south edge of the tarvia and partly on the gravel. The right front fender and headlight of defendant's automobile and the right rear side of plaintiff's automobile collided. The collision was not severe. Plaintiff, however, lost control of his automobile and it left the highway, rolled over two or three times, and came to rest alongside of the trunk highway about 175 to 200 feet west of the place of the collision. Plaintiff was thrown out of his automobile and was found about 60 feet west of it. Defendant's automobile either continued or was driven south and came to a stop on the graveled road. There was a verdict for plaintiff of $25,000. No claim is made that the verdict is excessive.

The questions raised by this appeal are: (1) Was the evidence sufficient to submit the issue of defendant's negligence to the jury and is it sufficient to support a verdict for the plaintiff? (2) Was the plaintiff guilty of contributory negligence barring recovery? (3) Did the court err in its rulings on evidence at the trial and in its failure to give an instruction based upon M. S. A. 169.14, subd. 3, first requested by defendant at the close of the arguments of counsel to the jury?

■ In deciding whether the evidence was sufficient to submit the issue of defendant's negligence to the jury and sufficient to support a verdict for the plaintiff, we are required to consider the evidence in the light most favorable to the verdict.[2] The defendant approaching an intersection of a through highway protected by stop signs was subject to and controlled by § 169.20, subd. 3, which provides in part as follows:

"The driver of a vehicle shall stop as required by this chapter *at the entrance to a through highway* and shall yield the right of way to other vehicles which have entered the intersection from the through highway *or which are approaching so closely on the through highway as to constitute an immediate hazard,* but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway." (Italics supplied.)

It was not only defendant's duty to stop before entering the intersection but it was his duty to stop at a point where he could effectively observe what traffic was approaching upon the through highway.[3] And having stopped it was his duty to remain there and to yield the right of way not only to vehicles which had entered the intersection from the through highway but to those vehicles ap-

---

[2]Leitner v. Pacific Gamble Robinson Co. 223 Minn. 260, 26 N. W. (2d) 228; Dose v. Yager, 231 Minn. 90, 42 N. W. (2d) 420; Norton v. Nelson, 236 Minn. 237, 53 N. W. (2d) 31.

[3]Bohnen v. Gorr, 234 Minn. 71, 78, 47 N. W. (2d) 459, 463; Olson v. Anderson, 224 Minn. 216, 218, 28 N. W. (2d) 66, 68.

proaching the intersection upon the through highway so closely as to constitute an immediate hazard. Only after doing that, and all of that, was the defendant permitted to proceed on into the intersection.[4] Where a driver of an automobile in obedience to a stop sign at a through highway has come to a full stop, as he is required to do under the statute, this in itself is an invitation to drivers approaching the intersection on the through highway so closely as to constitute an immediate hazard to proceed on through the intersection.[5]

The purpose of these rules of law is obvious. To permit a driver from an intersecting road to enter onto a through highway at an intersection protected by stop signs on any other basis would be to create a hazard rather than to avoid one and would defeat the very purpose for which the statute was enacted. It is a matter of common knowledge that one of the highway hazards is the driver who brings his automobile to a stop at a through highway in obedience to a stop sign and the statute and then in violation of the statute proceeds to enter the intersection without waiting for a vehicle which is on the through highway so close to the intersection as to constitute an immediate hazard to pass through it.

The driver of a vehicle upon a through highway who is approaching an intersection, knowing that it is protected by stop signs, may assume until he sees or should see otherwise that the driver approaching the intersection on the intersecting highway will respect the right of way and obey the statute.[6] Where the driver upon a through highway protected by stop signs is driving his vehicle at a speed which is prima facie lawful under § 169.14, subd. 2, he need not reduce his speed in passing over an intersection of said through highway and an intersecting road, pursuant to § 169.14, subd. 3, for the statute does not contemplate such reduced speed on through highways, providing none of the other factors specifically enumer-

[4]Zickrick v. Strathern, 211 Minn. 329, 1 N. W. (2d) 134.

[5]Blom v. Wilson, 209 Minn. 419, 296 N. W. 502.

[6]Neal v. Neal, 238 Minn. 292, 56 N. W. (2d) 673.

ated in § 169.14, subd. 3, are present.[7] We have indicated that, in the light of the statute as it now exists and the purpose for which it was enacted, it would not be negligence to drive through an intersection protected by stop signs at 45 to 50 miles per hour, the speed mentioned in the cited case, even though there was an obstruction at the corner of the intersection interfering with the view of the driver on the through highway.[8]

Section 169.14, subd. 2, provides that, where no special hazard exists, 60 miles an hour in the daytime is a lawful speed outside of a municipality. It seems proper to hold, as we do here, that a person driving on a through highway at 60 miles an hour in the daytime need not reduce his speed while approaching and passing over intersections along the through highway protected by stop signs where no special hazard exists other than an automobile approaching the intersection or stopped at it in obedience to a stop sign, provided that the driver of the automobile on the through highway is so close to the intersection as to constitute an immediate hazard to the automobile on the intersecting highway and provided further that the driver of the automobile on the through highway does not have reason to know that the driver on the intersecting highway is not going to obey the statute and yield the right of way to him. Likewise, drivers of vehicles on intersecting highways approaching the intersections of through highways protected by stop signs must anticipate that automobiles being driven upon through highways may approach and pass through intersections along the through highways at 60 miles an hour in the daytime where no special hazard exists without subjecting their drivers to a charge of negligence.

Viewing the evidence in the light most favorable to the verdict, the jury was justified in finding that the place where the defendant stopped his automobile was approximately ten feet north of the stop sign rather than at the entrance to the through highway as

[7]Neal v. Neal, *supra.*

[8]Olson v. Anderson, 224 Minn. 216, 28 N. W. (2d) 66.

required.[9] While the distance from the stop sign to the trunk highway does not appear from the record, the pictures received in evidence show that it is a substantial distance. From a point ten feet north of the stop sign defendant's view to the east would be materially impaired by the field of standing corn at the northeast corner of the intersection. The jury would have been justified in concluding that, because of the standing corn and its interference with the view, defendant was in error in his estimate of the distance between plaintiff's automobile and the intersection. The evidence of Miss Kufrin and Miss Beihoffer that they did not see defendant's automobile while stopped and that when they first saw it it was in motion lends support to this observation.

It was defendant's duty not only to stop but to stop where he could see. Likewise, it was his duty to keep a proper lookout. That required that he give some thought to the probable speed of plaintiff's automobile. He was required to anticipate that automobiles traveling upon the trunk highway during the daytime and under the conditions then existing upon the highway and at the intersection could be traveling at a speed of 60 miles an hour without their drivers being required to answer to a charge of negligence.

Above all else he was required to yield the right of way to a vehicle approaching the intersection so closely on the through highway as to constitute an immediate hazard. That plaintiff's automobile was so close as to constitute an immediate hazard is established by the event of the accident.[10] He was not permitted to take a close chance.[11] There were no distracting circumstances nor was there any other traffic on the highway to interfere with defendant's view. While defendant testified that, when he saw plaintiff's automobile it was "Maybe a thousand feet or so" away, the jury was not re-

[9]M. S. A. 169.20, subd. 3; Bohnen v. Gorr, 234 Minn. 71, 78, 47 N. W. (2d) 459, 464.

[10]Zickrick v. Strathern, 211 Minn. 329, 1 N. W. (2d) 134.

[11]If there is reasonable likelihood of a collision it is the duty of the driver of the vehicle on the intersecting road to delay his entry on the through highway until the driver on the through highway has passed. Peterson v. Lang, 239 Minn. 319, 58 N. W. (2d) 609.

quired to accept this estimate as the established distance. Estimates of speed, distance, and time involve varying factors and are always subject to human error. Arguments based upon estimates, while having considerable probative force before the trier of fact, have little force before an appellate court passing on an issue that has already been determined adversely to appellant.[12] The evidence, as a whole, and the inferences to be drawn therefrom, justified the jury in finding that plaintiff's automobile was considerably less than 1,000 feet from the intersection as estimated by defendant. Moreover, there were contradictions in defendant's testimony which justified the jury in disregarding or discounting parts of it if it so desired. The evidence taken as a whole would have justified a finding by the jury on the issue of negligence either way. In that situation we are not at liberty to disturb the jury's finding.

■■■ Defendant claims that plaintiff cannot recover because of contributory negligence. The inferences to be drawn from the evidence—the gyrations of the automobile in the accident, the distance plaintiff's automobile traveled after the accident, and the place where plaintiff was found—would have justified the jury in finding, if it so desired, that the plaintiff was traveling at an excessive rate of speed. On the other hand, from the evidence of Miss Kufrin and Miss Beihoffer, it was justified in finding that plaintiff's automobile was being driven at a lawful rate of speed. What significance was to be attached to the evidence that the plaintiff turned over into the left lane 600 feet or thereabouts from the intersection and whether this estimate of distance was accurate were questions for the jury. Whether plaintiff turned into the left lane because of impending danger or whether, observing defendant's automobile on the intersecting road, he turned as an added precaution were also matters for consideration by the jury.[13] The evidence indicates that if plaintiff, instead of turning into the left lane, had continued

[12]Ranum v. Swenson, 220 Minn. 170, 19 N. W. (2d) 327.

[13]Where a vehicle is driven into the left lane because of an emergency and an accident occurs, whether such conduct was reasonable in the light of the circumstances is for the jury. Vasatka v. Matsch, 216 Minn. 530, 13 N. W. (2d) 483; Sathrum v. Lee, 180 Minn. 163, 230 N. W. 580.

on his own side of the road the accident would not have been avoided. A fair inference to be drawn from the evidence is that in that situation defendant's automobile would have been struck broadside by plaintiff's automobile with perhaps more disastrous consequences. It is only when different minds can reasonably arrive at but one result that fact issues become questions of law justifying a court in substituting its judgment for the jury.[14] Generally the issues of negligence and contributory negligence in highway intersection accidents are for the jury. Where the verdict has the approval of the trial court, this court will only interfere if it is manifest that an injustice under the law has been done.

Defendant cites as its controlling cases Halloran v. Tousignant, 230 Minn. 399, 41 N. W. (2d) 874, and Freeman v. Matson, 230 Minn. 261, 41 N. W. (2d) 249. They are both distinguishable from this case. In the Halloran case a through highway was not involved, and the applicable statute here was not applicable there. In the Freeman case defendant was intoxicated, was exceeding the speed limit, and was driving at night without lights on the wrong side of the road; the evidence conclusively established as a matter of law that the plaintiff was exercising due care.

The issue of plaintiff's contributory negligence under the evidence in this case and the inferences to be drawn therefrom was for the jury.

■ At the completion of the arguments of counsel to the jury, according to the record, defendant for the first time requested an instruction to the jury embodying § 169.14, subd. 3. The request was denied. From what has been stated in this opinion concerning this statute, the ruling was right. Moreover, the request came too late.[15]

The other assignments of error, which deal with the rulings of the court on evidence during the trial, we do not consider suffi-

[14]Leitner v. Pacific Gamble Robinson Co. 223 Minn. 260, 26 N. W. (2d) 228.

[15]Pettit v. Nelson, 206 Minn. 265, 288 N. W. 223.

ciently important to require discussion. We have concluded that the rulings were right and in any event were not prejudicial.

Affirmed.