### OSWALD BOTZ, ADMINISTRATOR c.t.a. OF ESTATE OF LEONA KRIPS, v. MERCIDA KRIPS AND ANOTHER.

126 N. W. (2d) 446.

February 21, 1964—No. 39,160.

---

*William C. Hoffman,* for appellant.

*William G. Meyer* and *Howard I. Donohue,* for plaintiff respondent.

*Schroeder & Nelson,* for defendant respondent.

NELSON, JUSTICE.

This action was brought by Leona Krips against Mercida Krips and Edward Sobota to recover for personal injuries.[1] The jury returned a verdict for the plaintiff against Mercida Krips alone. Mercida appeals from the order of the trial court denying her alternative motion for judgment notwithstanding the verdict or a new trial on the question of liability alone. We shall refer to her hereinafter as defendant.

The pertinent facts are as follows: On May 12, 1961, defendant, then 39 years of age, drove her 1954 Chevrolet automobile south on U. S. Highway No. 71 from Bemidji to a point one mile south of Browerville, Minnesota, where her automobile collided with three black Hampshire hogs which had come out of the ditch on the west side of the highway. Plaintiff was a passenger riding in the front seat beside defendant. They had left Bemidji shortly after 5:30 p. m. and reached the point where the accident occurred shortly after 8 p. m. It had been raining when they left Bemidji but did not rain after they reached Browerville, although the day continued to be cloudy. Sunset occurred that evening at 7:37 p. m. and defendant drove with her car lights on low beam after leaving Browerville.

Highway No. 71 is a blacktop road, 24 to 26 feet wide, with a graveled shoulder 7 or 8 feet wide on each side. It was marked with a broken white centerline and the speed limit at the point of the accident was 60 m. p. h. during the day and 50 m. p. h. at night. A township road running east and west intersects Highway No. 71 just north of the point of the accident. From the west edge of Highway No. 71 to the west edge of the shoulder the land sloped 5 inches and from the west end of the shoulder to the bottom of the ditch it sloped 4 feet 7 inches. There was a field 30 feet west of the bottom of the ditch which was 2.2 feet higher than the ditch. The area between the field and the west shoulder of the highway was either black dirt or grass.

The automobile driven by defendant was in excellent mechanical condition with standard brakes and standard steering and was equipped with Gillette safety tires. Defendant testified that she drove at a speed

---

[1]Plaintiff died subsequent to the trial and Oswald Botz, administrator c.t.a. of her estate, was by order of the court below substituted as plaintiff.

of between 45 and 50 m. p. h. She also said that when she reached the intersection of the township road she saw a group of hogs beyond the intersection and that they were coming out of the ditch and onto the edge of the west shoulder. When her car was from 25 to 35 feet from the hogs and as they were walking across the shoulder toward the lane in which she was traveling, she slammed on her brakes but collided with the hogs. Although occupying the front seat beside defendant, plaintiff made no outcry prior to the collision.

Defendant Edward Sobota, the owner of the hogs struck by the automobile, testified that each animal weighed between 600 and 700 pounds and was about 40 inches in height. Sobota, who came to the scene of the collision about 10 minutes after the collision had occurred, said that the front end of defendant's car was 50 feet south of the intersecting road when he saw it. Donald K. Weise, a highway patrol officer who came to the scene about 8:40 that evening, said the rear end of the car was even with the south edge of the intersecting road and that there were skid marks approximately 9 feet long. Two of the hogs were killed and the third one was injured so badly that it had to be shot by Officer Weise. Officer Weise also testified that defendant said she had not seen the hogs until she hit them. She testified that less than one second, or two seconds at the outside, elapsed between the time that she saw the hogs on the shoulder and the time that the collision occurred. Sobota stated that when he came to the scene of the accident he could clearly see a fourth hog out in the field, but there was other testimony that he drove his truck into the west ditch so that its headlights pointed west toward the field where the fourth hog was roaming at the time.

It is clear that defendant made no effort to turn into the left lane, which was clear in the visible distance ahead, and that she was driving directly in the center of the lane when the collision occurred. There is testimony that her car was pushed back toward the intersection as a result of the collision. By its verdict against defendant only, the jury apparently found that she was negligent and that defendant Sobota was not. She contends on this appeal that the evidence does not sustain a finding of negligence on her part and that the court below erred

orally after the arguments to the jury and where no request is formulated in language suitable for the charge, saying:

"The plaintiffs contend that the case should have been submitted to the jury under the doctrine of *res ipsa loquitur*. However, according to the record, which must control our decision, the plaintiffs did not suggest this to the court until after the closing arguments had been made by both counsel, when counsel for the plaintiffs said: 'I request the court to instruct the jury under the doctrine of *res ipsa loquitur*.' He did not formulate a request setting out the doctrine or its claimed application to the case before the jury, and the court did not charge on that theory. 2 Mason Minn. St. 1927, § 9298, contemplates that such requests shall be submitted to the court in writing before the case is argued by either party and that the court in its discretion, if it so desires, may hear arguments before acting upon such requests * * *. When they are not so submitted the trial court is not required to consider them. * * * In deference to the statute and in fairness to the trial court we could not hold otherwise. Moreover, counsel may not shoulder the burden of formulating such requested charge onto the court by a mere general suggestion that the court charge the jury upon a certain doctrine. He must formulate the request in writing as he thinks it should be given by the court."

In Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320, at the completion of the arguments to the jury, the defense for the first time requested an instruction embodying Minn. St. 169.14, subd. 3, and the trial court denied it. This court held the statute inapplicable on the facts but said also that the request came too late, citing Pettit v. Nelson, *supra.*

In Sathrum v. Lee, 180 Minn. 163, 230 N. W. 580, defendant requested an instruction on the emergency rule, apparently doing so after the arguments had been made but before the jury retired. The trial court considered the request but declined to give it. With respect to the plaintiff's objection that the request had been made too late to be considered, this court said (180 Minn. 165, 230 N. W. 582):

"* * * The most that can be said is that the trial judge is 'not required to consider' special requests which are not 'seasonably' presented."

The law appears to be well settled that failure to charge on any certain point of law is generally not error in the absence of a timely request from counsel.[2] Here it is clear that defendant did not make timely requests and did not present them in language suitable for the charge.

■    Although the trial court did not give specific instructions with respect to unavoidable accident, it appears that the general charge covered the substance of the defense in the following words:

*"The fact that an accident occurs is not in itself evidence of negligence. Negligence must be proven."* (Italics supplied.)

Although the court did not elaborate, he made the foregoing statement introductory to his instructions on the negligence issues.

A proper instruction on the subject of "accident" is an elaboration of the proposition that the defendant is not liable if he was without fault, and so while it may be proper to give such a charge if requested, the failure to give it is not reversible error where the jury is fully instructed on negligence, proximate cause, and burden of proof. See, Annotation, 65 A. L. R. (2d) 12, § 47. It is not error to refuse or fail to give such an instruction where the substance of it is adequately covered by other instructions. In a few jurisdictions instructions on unavoidable accident are now disapproved. It has been said that such an instruction merely restates a phase of the law of negligence, serves no useful purpose, in effect overemphasizes the defendant's case, is apt to confuse and mislead, and should not be given. 8 Am. Jur. (2d) Automobiles and Highway Traffic, § 1032.

The charge in this case fully delineated to the jury the rules which exact of all drivers due care and compliance with all traffic regulations and must have made the jury realize that, although the demand for due care is ever present, its exaction of the individual is dependent upon the difficulties which face him when he is required to act. The instructions were applicable not only to conduct pursued under nor-

[2]See, Nepstad v. Lambert, 235 Minn. 1, 18, 50 N. W. (2d) 614, 624; Schleuder v. Soltow, 239 Minn. 453, 462, 59 N. W. (2d) 320, 326; Gracz v. Anderson, 104 Minn. 476, 116 N. W. 1116; 19 Dunnell, Dig. (3 ed.) § 9772; Dwyer v. Illinois Oil Co. 190 Minn. 616, 618, 252 N. W. 837, 838. See, also, 14 Dunnell, Dig. (3 ed.) § 7179.