# EDWIN B. SEIVERT, TRUSTEE FOR THE HEIRS OF RAMONA I. ROSENBROOK, AND OTHERS v. RONALD W. BASS AND ANOTHER.

181 N. W. (2d) 888.

November 27, 1970—No. 42319.

458

Brecht, Hedeen & Hughes and Laurence B. Hughes, for appellants.

Winter, Lundquist & Sherwood and Marvin E. Lundquist, for respondent Christians.

Heard before Knutson, C. J., and Nelson, Murphy, Rogosheske, and Frank T. Gallagher, JJ.

NELSON, JUSTICE.

The actions involved on this appeal result from an automobile accident which occurred July 20, 1968, at the intersection of County Road No. 13 and County Road No. 6 in Nobles County, approximately 5 miles south of the village of Rushmore, Minnesota, between an automobile driven by Ronald W. Bass and a pickup truck driven by William John Christians.

As a result of the collision, Bass was injured, and Terry Eggleston and Ramona I. Rosenbrook, passengers in his automobile, were killed. William Christians and his passengers, Hilda Christians, his wife, and Gladys Christians, his daughter-in-law, were injured.

Edwin B. Seivert, trustee for the heirs of Ramona Rosenbrook, and Carol Eggleston, trustee for the heirs of Terry Eggleston, commenced actions for death by wrongful act against both drivers. Gladys Christians and LeRoy Christians commenced an action against both for personal injuries and consequential damages, and William Christians and Hilda Christians commenced an action against Bass for personal injuries, consequential damages, and property damage. By order of the trial court all cases were consolidated and tried to a jury.

The negligence of Bass was established by the court as a matter of law, and the balance of the issues were submitted to the jury on special interrogatories. The jury returned a verdict finding the negligence of Bass a proximate cause of the accident. The same jury further found William Christians negligent but held that his negligence did not contribute as a proximate cause of the accident. The jury awarded Seivert $27,000; Mrs. Eggleston, $13,000; Gladys Christians, $1,200; LeRoy Christians, $825; Hilda Christians, $5,000; and William Christians, $27,500.

Plaintiffs Seivert, Eggleston, Gladys Christians, and LeRoy Christians joined in a motion for judgment against defendant William Christians notwithstanding the verdict on the grounds that defendant Christians' negligence was a proximate cause of the accident as a matter of law and that the trial court erred in not granting their motion for a directed verdict against him. In the alternative they sought a new trial on those grounds and on the ground that the court erred in its instructions to the jury with respect to the duty owed by a driver on a through highway. These plaintiffs appeal from the order denying their alternative motion.

The accident occurred between 12:30 and 1 p. m. The weather was clear and bright. The roads involved were blacktop roadways. County Road No. 6 runs in an east-west direction and is controlled at its intersection with County Road No. 13 by stop signs. Some distance westerly of the intersection on County Road No. 6, there is a sign reading "stop ahead." County Road No. 13 is a through highway intersecting with County Road No. 6 and runs in a north-south direction. A warning sign showing a crossing ahead is located on County Road No. 13 some distance south of the intersection.

Defendant Bass was driving his 1967 white Plymouth automobile in an easterly direction on County Road No. 6 at a speed of 65 miles per hour. Terry Eggleston was riding as a passenger in the front seat and Ramona I. Rosenbrook and Kimberly Rosenbrook, her daughter, were riding as passengers in the back seat.

Bass failed to stop for the stop sign at the intersection of the roads.

At about the same time, defendant Christians was driving his 1968 red and white GMC ½-ton pickup truck in a northerly direction on County Road No. 13 at a speed of 50 to 55 miles per hour. Gladys Christians was riding as a passenger in the right hand seat. Hilda Christians was seated in the middle between William and Gladys.

The view of each driver as he approached the intersection of the county roads was totally unobstructed. Each driver was able to see the other vehicle approaching for a distance of at least 350 feet back from the intersection. The windshields and windows of both vehicles were free of obstructions to vision.

At a point 350 feet south of the intersection Gladys Christians observed the Bass vehicle approaching from the west. She continued to watch it approach and at a point 300 feet south of the intersection said, "Gee, that car's coming fast." Hilda Christians responded, "Yes, it is." At the time of this conversation, the windows of the pickup truck were up and the occupants thereof were able to converse in a normal speaking voice. Both vehicles proceeded to the intersection without change in either speed or direction. The Bass vehicle struck the Christians' pickup truck on the left side at a point in the center of the intersection. After impact the vehicles ran into the ditch in the northeast corner of the intersection.

At the close of the testimony plaintiffs requested the trial court to instruct the jury with respect to the duty owed by a driver on a highway protected by stop signs as follows:

"You are instructed that the right of a driver on a through highway to assume that another driver approaching on an intersecting highway will heed the stopsign, is not absolute. If surrounding circumstances give notice to a person of ordinary prudence that the warning of the stopsign may be ignored, the driver on the through highway should act accordingly and take appropriate precautions. You are further instructed that the Defend-

ant William J. Christians was required to take appropriate precautions as he approached this intersection at such time as he saw, or in the exercise of due care, should have seen that Ronald Bass was not going to yield the right-of-way to him."

The court refused to give this instruction, but read to the jury the first paragraph of Minn. St. 169.20, subd. 3:

"The driver of a vehicle shall stop as required by this chapter at the entrance to a through highway and shall yield the right of way to other vehicles which have entered the intersection from the through highway or which are approaching so closely on the through highway as to constitute an immediate hazard, but the driver having so yielded may proceed, and the drivers of all other vehicles approaching the intersection on the through highway shall yield the right of way to the vehicles so proceeding into or across the through highway."

The court also read to the jury Minn. St. 169.14, subd. 1; part of § 169.14, subd. 3; and § 169.96.

During the course of the jury's deliberation, it made the following request for additional instructions:

"What is your definition of 'a direct cause of the accident?'

"What is your definition of 'contribute as a direct cause of the accident?' "

In response to these inquiries, relayed to him by the clerk of the District Court of Nobles County, the trial court responded, "You will have to recall my instructions."

It was in the discretion of the court to determine whether additional instructions were necessary to explain the instructions involved. We have held in Sauke v. Bird, 267 Minn. 129, 125 N. W. (2d) 421, that although an instruction to the jury is unduly abbreviated, if it is reasonably accurate the trial court is not obliged to expand on it where the instruction proposed, while technically correct, is weighted in favor of the party requesting it.

■ Plaintiffs argue that the evidence in the record compels a finding that the negligence of defendant Christians, as found by the jury, was a proximate cause of the accident. As a result, the principal issue presented by this appeal is whether the trial court was correct in denying the post-trial motions of plaintiffs and thus allowing the jury's finding that the negligence of defendant Christians was not a proximate cause of the accident to stand. Plaintiffs refer to the basic rule of proximate cause set forth in Christianson v. Chicago, St. P., M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640, and Haugen v. Dick Thayer Motor Co. 253 Minn. 199, 91 N. W. (2d) 585, citing the rule as set forth in the Christianson case with approval. In Christianson this court said (67 Minn. 97, 69 N. W. 641):

"* * * Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow."

Plaintiffs argue that in the instant case the negligence of the drivers of the vehicles occurred simultaneously; that their original negligence produced the harmful consequences which naturally followed their acts; and that the actions of each were reasonably foreseeable by the other. They therefore argue that there was no intervening efficient cause which would prevent a causal connection between the negligence of Christians and the consequences which followed. Citing Lee v. Lee, 248 Minn. 496, 80 N. W. (2d) 529, they argue also that the negligence of Bass occurred so near in time to the negligence of Christians and the happening of the accident that Bass' negligence could not possibly in the remaining time interval have found expression to stop or break the negligence of Christians as a proximate cause of the accident. They contend that a practical consideration of the evidence shows that defendant Christians either failed to see the readily observable fact that Bass was not going to stop for

the stop sign, or observed such fact and thereafter failed to operate his vehicle in a proper manner, and that on these grounds the jury found that Christians was negligent. Plaintiffs then argue that it is impossible to conclude that such negligence did not contribute as a proximate cause of the accident when the negligent acts and the ultimate consequences were separate in time and space by several seconds and 300 feet.

The trial court approved the special verdict in its entirety, and in its memorandum accompanying its order denying plaintiffs' motions stated that in its opinion there was evidence from which the jury could find as it did: The Christians' truck was traveling between 50 and 60 miles per hour and did not change course or speed at a point at least a mile south of the intersection up to the point of impact; the Bass automobile was traveling in excess of 65 miles per hour and did not change course or speed as it approached the stop sign, proceeded through the stop sign, and into the intersection up to the impact; defendant Christians was negligent either by reason of his failure to look or in looking but failing to see what he should have seen; even if Christians had looked and had seen the Bass automobile, he would have been unable to avoid the accident because of the excessive speed of the Bass automobile—i. e., at the time a reasonably prudent man exercising due care would have realized that the Bass automobile was not going to stop, it would have been too late to avoid the accident because of the excessive speed of the Bass automobile.

The trial court in concluding its memorandum expressed the view that from all the evidence received at the trial the jury could well have believed that the extreme speed of the Bass automobile, with no change in speed or course, was the sole cause of the accident.

In Simon v. Carroll, 241 Minn. 211, 62 N. W. (2d) 822, the plaintiff, Simon, testified that, after defendant Carroll's sudden and high-speed appearance over a hilltop, he tried to turn to the right from his middle-of-the-road position of danger but that

he had no time to do so. This court said (241 Minn. 218, 62 N. W. [2d] 827):

"* * * The jury under the circumstances could reasonably find that, had Carroll been driving at a reasonable rate of speed, Simon would have been enabled to turn to the right from his negligent though customary course of travel and that the accident would then not have occurred. It follows that the jury could reasonably find that Carroll's excessive speed was the sole proximate cause of the accident and that Simon was *not* guilty of contributory negligence as a matter of law."

The court in Simon also made it clear that if in the light of the entire evidence reasonable men can differ as to whether there is a causal connection between the plaintiff's negligent act and the happening of the collision, the question of proximate cause is for the jury.

Mr. Chief Justice Loring, speaking for the court in Olson v. Anderson, 224 Minn. 216, 219, 28 N. W. (2d) 66, 68, said:

"* * * Both drivers were familiar with the intersection and knew that it was protected against traffic on the town road by a stop sign. The driver upon a highway which he knows to be protected by stop signs may assume, until he sees otherwise, that drivers approaching an intersection so protected will heed the stop sign and not only stop, but look for and yield the right of way to other vehicles which are approaching so closely on the through highway as to constitute an immediate hazard. § 169.20, subd. 3. In short, he may assume ordinary care on the part of such drivers until he observes the contrary. Zickrick v. Strathern, 211 Minn. 329, 332, 1 N. W. (2d) 134, 136. As said in that case, the approaching car on the through highway was a very immediate hazard, which the driver on the cross road should have taken time to observe and to which he should have yielded the right of way. Here, plaintiff's driver, until he saw otherwise, might reasonably assume that defendant would stop, look, and yield the right of way. In the light of the present

statute, which differs from previous ones requiring only a stop, we think that plaintiff's driver, knowing of the stop sign, might have reasonably assumed, notwithstanding he could not see to the east, that he was safe in approaching and driving through the intersection at even 45 or 50 miles an hour. We consider that he was free from negligence as a matter of law."

The evidence is clear in the instant case that defendant Bass was traveling at a speed of 65 miles per hour and, without slackening his speed at all, drove through the stop sign at a through highway intersection while defendant Christians, traveling on the through highway at 50 to 55 miles per hour, approached the intersection. The prima facie speed limit on the through highway was 60 miles per hour.

Upon the facts of this case, the trial court was justified in holding that Bass was negligent as a matter of law. Under the testimony Bass was aware of the stop sign and either failed to heed its purpose or chose to ignore it, thus violating his duty to stop, look for, and yield the right-of-way to cars within the zone where they constituted an immediate hazard.

Defendant Christians, knowing he was on an arterial or through highway, had a right to assume, until he saw otherwise, that the Bass car would heed the stop sign and not only stop but also yield the right-of-way to his car, which was approaching so closely on the through highway so as to constitute an immediate hazard. He could assume ordinary care on the part of Bass until he observed the contrary. Olson v. Anderson, *supra.*

A stop sign such as the one Bass failed to heed is intended to warn motorists of the presence of a through or arterial highway, and our statute requires the driver of a vehicle approaching a through highway to stop at the entrance to such highway. Stop signs are usually erected some distance from the entrance to the through highway in order to afford approaching motorists an opportunity to stop before they reach the through highway. Clearly then, the driver of a vehicle upon a through highway who is approaching an intersection, knowing that it is protected by

stop signs, may assume, until he sees or should see otherwise, that the driver approaching the intersection on the intersecting highway will respect the right-of-way and obey the statute.

We cannot agree with plaintiffs' contention that the record compels a conclusion that the conduct of defendant Christians was a proximate cause of the accident as a matter of law. The facts herein are not susceptible to a single inference. It was for the jury, in the exercise of its broad powers with respect to the drawing of inferences from the evidence, to determine the issue of causation. Ordinarily, that issue is for the jury, and its determination must stand unless manifestly and palpably contrary to the evidence viewed as a whole and in the light most favorable to the verdict. It is only in those cases where the evidence is so clear and conclusive as to leave no room for differences of opinion among reasonable men that the issue of causation becomes one of law to be decided by the court.

The following cases support the jury's determination that defendant Christians' negligence was not a proximate cause of the accident and the alleged resulting injuries and damages: Simon v. Carroll, 241 Minn. 211, 62 N. W. (2d) 822; Lott v. Davidson, 261 Minn. 130, 109 N. W. (2d) 336. See, Lapides v. Wagenhals, 285 Minn. 403, 173 N. W. (2d) 334; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320.

■ Another contention of plaintiffs is that the refusal of the trial court to instruct the jury in accordance with their requested instruction set forth above constitutes error. In support of their contention they cite Dose v. Yager, 231 Minn. 90, 42 N. W. (2d) 420; Neal v. Neal, 238 Minn. 292, 56 N. W. (2d) 673; Schleuder v. Soltow, 239 Minn. 453, 59 N. W. (2d) 320; and Tollefson v. Ehlers, 252 Minn. 370, 90 N. W. (2d) 205.

Plaintiffs contend that the trial court erred in its instructions relative to the rights of drivers proceeding upon an arterial or through highway on crossing over such a highway from a road intersecting the same; that the trial court failed to explain to the jury the statutory law on this subject; and that the failure

on the part of the jury to find a causal connection between the negligence of Christians and the collision which followed may be directly attributed to the error on the part of the trial court in not giving plaintiffs' requested instruction.

We cannot agree that the jury was misled or incorrectly instructed with reference to the law applicable to arterial or through highways where stop signs are placed at all points where other roads intersect. While reading the provisions of the statutes to the jury in proper sequence might be preferable, nevertheless, we think the charge on the whole fairly stated the applicable law from a practical point of view. The instruction of the trial court must be read in its entirety, and all that is required is that it convey to the jury a clear and correct understanding of the law. It is unnecessary that every possible opportunity for misapprehension be guarded against.

We conclude that the trial court did not err to plaintiffs' prejudice, so as to entitle them to a new trial, in instructing the jury as to the statutory provisions governing these cases and in refusing to give plaintiffs' requested instructions. Tollefson v. Ehlers, *supra*; Sauke v. Bird, 267 Minn. 129, 125 N. W. (2d) 421. See, also, Hovey v. Wagoner, 287 Minn. 546, 177 N. W. (2d) 796; Boraas v. Carlson, 267 Minn. 478, 127 N. W. (2d) 439, with reference to requests for specific instructions.

We have not overlooked other arguments urged by plaintiffs as grounds for reversal, but they do not require discussion. Since the fact issues as to negligence and proximate cause were properly submitted to the jury, an affirmance must follow.

Affirmed.