**Mark MOZES, Plaintiff,**

v.

**MEDTRONIC, INC., Defendant.**

**No. CIV. 96–993/RHK/JMM.**

United States District Court,
D. Minnesota.

June 24, 1998.

Daniel Schermer, Schermer & Schermer, Minneapolis, MN, for Plaintiff.

Mark Lee, Michael McCarthy & Robert Purdy, Maslon, Edelman, Borman & Brand, Minneapolis, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

In 1991, Plaintiff Mark Mozes ("Mozes") received a pacemaker that contained a pacemaker lead manufactured by Defendant Medtronic, Inc. ("Medtronic"). While in Par-

is in 1994, Mozes required emergency surgery during which the doctors replaced parts of his pacemaker, including the lead. Mozes then filed suit against Medtronic, alleging product liability claims based upon negligence, strict liability, and a failure to warn. Currently before the Court are Defendant's Motion for Summary Judgment and Plaintiff's Motion for Partial Summary Judgment. For the reasons set forth below, the Court will grant the Defendant's Motion and deny the Plaintiff's.

### Facts

Mozes is currently an 89–year–old citizen of Israel who lives in Tel Aviv. (M. Mozes Aff. ¶¶ 2–3.) In February 1991, at the Henry Ford Hospital in Detroit, Michigan, Dr. Charles Webb implanted a pacemaker in Mozes. (*Id.* ¶ 4; May 11, 1998 Schermer Aff. Exs. 1 & 2 (Henry Ford Hospital records).) As part of this procedure, a Medtronic Model 4082 ventricular lead ("Model 4082 lead") was implanted in Mozes. (M. Mozes Aff. ¶ 5.)

While he was in Paris in June 1994, Mozes lost consciousness and was taken to the American Hospital. (M. Mozes Aff. ¶ 9.) Doctors there performed emergency surgery on Mozes because of a "paroxysmal artiroventricular block" with his pacemaker. (May 11, 1998 Schermer Aff. Ex. 8 (English translation of the operation report of Dr. Zelasko).) During the surgery, the doctors replaced both pacemaker leads and the pacemaker unit. (*Id.*) In his report, Dr. Zelasko, who performed this operation, stated that the "breakdown of stimulation [was] without [a] doubt due to a Medtronic 40/82 ventricular catheter owing to a low impedance." [1] (*Id.*) Dr. Zelasko did not indicate what caused the low impedance in the Medtronic lead. (*See id.*) The new ventricular lead that Dr. Zelasko placed in Mozes, however, had a lower impedance than the lead that was replaced. (Ebert Aff. ¶ 8.)

In October 1993, Medtronic issued a "Health Safety Alert" regarding several of its pacemaker leads, including the Model 4082. (Apr. 30, 1998 Schermer Aff. Ex. 4

(Health Safety Alert).) In this report, Medtronic stated:

> The performance of [lead Models 4004/4004M and 4082] is less than anticipated and warrants your attention. . . . In a cover letter accompanying the February 1993 issue [of our Product Performance Report], we communicated that Chronic Lead Study data for the Models 4004/4004M indicated actuarial survival of 97.0 ± 1 .7% (± 2 standard errors) at 36 months and 96.2 ± 2.4% at the leading edge of 42 months. Data through August 1993 now indicate that survival is 96.5 ± 1.6% at 36 months and 95.1 ± 2.2% at 42 months. With a very small sample size, survival at 48 months is 91.9 ± 4.2%. The Model 4082 is expected to be comparable since it utilizes the same lead body as the Models 4004/4004M. . . .

> With improvements in lead technology, some improvements in the performance of polyurethane bipolar leads have been achieved. However, not all insulation nor fracture failures have been eliminated in the Models 4004/4004M. For example, in spite of features designed to reduce potential for metal ion oxidation (MIO), 40 out of approximately 74,000 Model 4004/4004M leads have been confirmed by Returned Product Analysis as MIO failures. By comparison, 79 crush fractures have been confirmed.

> Insulation failure in these lead models is typically a slow, chronic process and is expected to increase slowly in the future. The most common manifestation of this failure mechanism is intermittent over and undersensing and then intermittent loss of capture. These intermittent events can generally be detected during careful follow-up procedures.

(*Id.*) Medtronic sent a copy of the "Health Safety Alert" and a list of patients who had received these leads to Dr. Webb (Zacharias Aff. Ex. B (return confirmation card regarding Health Safety Alert); M. Mozes Aff.

---

1. Mozes did not submit an affidavit from Dr. Zelasko, to further explain any of the statements that he made in this report or the basis for his opinion that the failure of the lead was due to low impedance. Moreover, Mozes supplied the Court with no other expert testimony explaining Dr. Zelasko's report or any of the procedures that were performed on Mozes during his emergency surgery in Paris. Thus, the Court is left to decipher what happened to Mozes purely from the operating report of Dr. Zelasko.

¶ 17), but it did not send a copy to Mozes. (M. Mozes Aff. ¶ 18.)

## Analysis

### I. Standard of Review

Federal Rule of Civil Procedure 56 states: [Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). Summary judgment is to be granted only where the evidence is such that no reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the court should draw all justifiable inferences in a light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986); *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. at 2513; *see also Thomas v. Runyon,* 108 F.3d 957, 959 (8th Cir.1997). Where a moving party makes and supports a motion for summary judgment in accordance with Rule 56, a party opposing the motion may not rest upon the allegations or denials of its pleadings; rather, the adverse party's response must "set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2514. *See also* Fed.R.Civ.P. 56(e).

### II. Defective Product

Mozes has alleged products liability claims against Medtronic, under theories of strict liability and negligence, for selling a pacemaker lead that was defective and unreasonably dangerous. (Compl.¶¶ 5–7.)

■ Under Minnesota law, in order to establish a products liability claim based upon a defective design, a plaintiff must show that: 1) the defendant's product was in a defective condition unreasonably dangerous for its intended use; 2) the defect existed when the product left the defendant's control; and 3) the defect was the proximate cause of the injury sustained. *Bilotta v. Kelley Co.,* 346 N.W.2d 616, 623 n. 3 (Minn. 1984); *Marcon v. Kmart Corp.,* 573 N.W.2d 728, 731 (Minn.Ct.App.1998), *review denied,* Apr. 14, 1998. In design defect cases, Minnesota courts have fused a negligence theory into a traditional strict liability theory to determine whether a product was defective. *See Johnson v. John Deere Co.,* 935 F.2d 151, 155 (8th Cir.1991); *Westbrock v. Marshalltown Mfg. Co.,* 473 N.W.2d 352, 356 (Minn.Ct.App.1991). Accordingly, a product is in a defective condition unreasonably dangerous for its intended use if the manufacturer:

fails to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in the manner for which the product was intended, as well as an unintended yet reasonably foreseeable use.

What constitutes "reasonable care" will, of course, vary with the surrounding circumstances and will involve a balancing of the likelihood of harm, and the gravity of harm if it happens, against the burden of the precaution which would be effective to avoid the harm.

*Bilotta,* 346 N.W.2d at 621.

■ Medtronic argues that it is entitled to summary judgment because this is the type of case that would require expert testimony, yet Mozes has failed to provide any expert testimony on the issues of whether the lead at issue was in a defective condition unreasonably dangerous for its intended use or whether that defect caused his injuries.[2]

2. Medtronic also notes that Mozes has not identified any experts who will be testifying at trial in either his pretrial disclosures made pursuant to the Court's Pretrial Scheduling Order or in his answers to interrogatories. (Def.'s Supp. Mem. at 9–10.)

(Def.'s Mem. in Supp. of its Mot. for Summ. J. at 6–9.) ("Def.'s Supp. Mem.") Mozes is required to produce expert testimony on these issues, Medtronic maintains, because of the complexity of the medical device involved in the dispute. (*Id.* at 7.)

■ The Court agrees that the instant case involves issues of such a complex nature that Mozes is required to prove his defective product claims with expert testimony. Although this Court is not aware of any Minnesota case law requiring the use of expert testimony in products liability cases, it believes that the standard and rationale that the Minnesota courts use for determining when expert testimony is required in negligence cases applies fully to product liability cases. Under this standard, Minnesota courts do not require the use of expert testimony to establish the standard of care "where the acts or omissions complained of are within the general knowledge and experience of lay persons." *Atwater Creamery Co. v. Western Nat'l Mut. Ins. Co.,* 366 N.W.2d 271, 279 (Minn.1985). If, however, "it would be speculative for the fact finder to decide the issue of negligence without having the benefit of expert testimony on the standard of care, the expert testimony is necessary." *Id.*

In the instant case, the workings of pacemakers and pacemaker leads, as well as the reasons why they fail to perform, are not within the general knowledge and experience of lay persons. Moreover, the standard of care that a medical manufacturer must exercise in designing a pacemaker lead and the various risks that must be balanced in exercising this standard of care are not within the general knowledge and experience of lay people. Without expert testimony, a jury would be forced to speculate in determining whether Mozes had proven the requisite elements on his defect claims.

■ The Court finds that Mozes has failed to create a genuine issue of material fact regarding whether the Model 4082 lead that was implanted in him was in a defective condition unreasonably dangerous for its intended use. *Marcon,* 573 N.W.2d at 731. Mozes has not provided the opinion testimony of any expert on this issue. He has offered the medical records from the surgeon in France who operated on him.[3] In his report on the surgery, Dr. Zelasko stated that the "breakdown of stimulation [was] without [a] doubt due to a Medtronic 40/82 ventricular catheter owing to a low impedance." (May 11, 1998 Schermer Aff. Ex. 8.) In this statement, however, Dr. Zelasko does not indicate that he believes that the low impedance caused the lead to be in a defective condition unreasonably dangerous for its intended use. *See Patton v. Newmar Corp.,* 538 N.W.2d 116, 120 (Minn.1995) (holding that expert's affidavit that contained only conclusory statement that the product was defectively designed was insufficient evidence to survive a motion for summary judgment). This one unexplained statement is insufficient to create a factual issue regarding whether the Model 4082 lead that Mozes received was in a defective condition unreasonably dangerous for its intended use.

■ Mozes also contends that he is not required to supply expert testimony because he can prove his case under the doctrine of res ipsa loquitur.

■ Under Minnesota law, a plaintiff can use the doctrine of res ipsa loquitur to prove her product liability claims based upon negligence and strict liability. *Holkestad v. Coca–Cola Bottling Co.,* 288 Minn. 249, 257, 180 N.W.2d 860, 865–66 (1970). A plaintiff must show three things in order to submit her claims to a jury under the doctrine of res ipsa loquitur: (1) the accident in question was the kind that does not occur without someone's negligence; (2) at the time of the injury, the instrumentality causing the accident was in the exclusive control of the de-

---

3. Mozes has also provided the Court with two letters written by Dr. Zelasko and Dr. Feldman, his treating physician in Israel, both addressed "To whom it may concern." (May 11, 1998 Schermer Aff. Exs. 6 & 10.) Dr. Zelasko's letter is unsigned. (*Id.* at Ex. 6.) In these letters, the doctors state that Mozes' was found to have a failure of a ventricular lead when he was in Paris in 1994. (*Id.* at Exs. 6 & 10.) Both of these letters are hearsay, however, and Mozes has failed to explain why they are admissible. *See Reynolds v. Land O'Lakes, Inc.,* 112 F.3d 358, 364 (8th Cir.1997) (noting that plaintiff cannot defeat a summary judgment motion with inadmissible hearsay).

fendant; and (3) the condition which resulted in the injury was not due to the conduct of the plaintiff or some third party. *See Holten v. Parker,* 302 Minn. 167, 173–74, 224 N.W.2d 139, 144 (1974); *Stearns v. Plucinski,* 482 N.W.2d 496, 499 (Minn.Ct.App.1992). If the accident may reasonably be attributable to one or more causes for which defendant is not responsible, the doctrine does not apply. *Raines v. Sony Corp. of Am.,* 523 N.W.2d 495, 497 (Minn.Ct.App.1994).

The Court finds that Mozes has failed to establish that the doctrine of res ipsa loquitur could apply to his product liability claims. Mozes has offered no evidence demonstrating that pacemaker leads fail only because of someone's negligence. In fact, Mozes states in his Reply Memorandum that "it is undoubtedly correct" that pacemaker leads can fail without negligence. (Pl.'s Reply Mem. at 4.) Medtronic, however, has provided evidence indicating that leads can fail for a variety of reasons, including medical complications, body rejection phenomena, allergic reaction, and surgical techniques, all of which occur without someone acting in a negligent manner. (Ebert Aff. ¶ 5.) Moreover, Medtronic has produced evidence indicating that leads can fail due to the actions of others, typically the medical personnel who handle and implant the lead. (*Id.*) Res ipsa loquitur is clearly inapplicable to the instant case because "the accident may reasonably be attributable to one or more causes for which defendant is not responsible." *Raines,* 523 N.W.2d at 497.

Accordingly, the Court finds that Medtronic is entitled to summary judgment on Mozes' product liability claims brought under theories of strict liability and negligence and based upon a defect in the Model 4082 lead, and the Court will grant Medtronic's Motion with respect to these claims.

### III.  Failure to Warn

Mozes claims that Medtronic had a duty to warn him of the problems experienced with the Model 4082 lead that was implanted in him, and that Medtronic breached this duty by failing to send him the "Health Safety Alert." (Compl.¶ 8.)

The product literature included with the Model 4082 lead that was implanted in Mozes contained a "General Warning:"

Medtronic implantable leads are implanted in the extremely hostile environment of the human body. Leads are necessarily very small in diameter and must be very flexible, which unavoidably reduces their potential performance or longevity. Leads may fail to function for a variety of causes, including but not limited to: medical complications, body rejection phenomena, allergic reaction, fibrotic tissue, or failure of leads by breakage or breach of their insulation covering. In addition, despite the exercise of all due care in design, component selection, manufacture and testing prior to sale, leads may be easily damaged before, during or after insertion by improper handling or other intervening acts. Consequently, no representation or warranty is made that failure or cessation of function of leads will not occur or that the body will not react adversely to the implantation of leads or that medical complications (including perforation of the heart) will not follow the implantation of leads or that the lead will, in all cases, restore adequate cardiac function.

(Ebert Aff. Ex. B (Technical Manual for Tined, Transvenous Pacing Leads).) In addition to providing this warning, Medtronic sent a copy of the "Health Safety Alert" to Dr. Webb, the physician who implanted the Model 4082 lead in Mozes. (Zacharias Aff. Ex. B.)

Under Minnesota law, a manufacturer has a duty to warn users of its products of all dangers associated with those products of which it has actual or constructive knowledge. *Gryc v. Dayton–Hudson Corp.,* 297 N.W.2d 727, 739 (Minn.1980); *Harmon Contract Glazing, Inc. v. Libby–Owens–Ford Co.,* 493 N.W.2d 146, 151 (Minn. Ct.App.1992). "Failure to provide such a warning will render the product unreasonably dangerous and will subject the manufacturer to liability for damages under strict liability in tort." *Gryc,* 297 N.W.2d at 739 (quotation omitted). The question of whether a duty to warn exists is a question of law for the Court. *Harmon,* 493 N.W.2d at 151.

Medtronic contends that Mozes' failure to warn claim should be dismissed under the learned intermediary doctrine because it is

undisputed that Medtronic warned the physician who implanted the lead in Mozes about the dangers associated with the Model 4082 lead and sent him a copy of the "Health Safety Alert." (Def.'s Opp'n Mem. at 19–20.) The Court agrees.

When a plaintiff's failure to warn claim involves medical issues, courts have found that a manufacturer does not have a duty to warn the lay public. *See Mulder v. Parke Davis & Co.*, 288 Minn. 332, 335 n. 1, 181 N.W.2d 882, 885 n. 1 (1970) ("The manufacturer has no duty to warn the lay public regarding prescription drugs.") Instead, the manufacturer has a duty to warn the medical professional—the learned intermediary—regarding the dangers inherent in medical devices. *See e.g., Bravman v. Baxter Healthcare Corp.*, 984 F.2d 71, 75 (2d Cir.1993) (holding, under New York law, that maker of heart valve had a duty to warn treating physician about dangers of product, and not the patient who received the valve). Manufacturers have a duty to warn only the treating physician because she "is in the best position to understand the patient's needs and assess the risks and benefits of a particular course of treatment." *Brooks v. Medtronic, Inc.*, 750 F.2d 1227, 1231 (4th Cir. 1984).

Minnesota courts have not applied the learned intermediary doctrine in the context of medical devices. This Court, however, believes that Minnesota courts would follow the large number of jurisdictions that have applied the doctrine to cases involving medical devices. *See Jacobs v. E.I. Du Pont De Nemours & Co.*, 67 F.3d 1219, 1238–40 (6th Cir.1995); *Violette v. Smith & Nephew Dyonics, Inc.*, 62 F.3d 8, 13–14 (1st Cir.1995), *cert. denied*, 517 U.S. 1167, 116 S.Ct. 1568, 134 L.Ed.2d 667 (1996); *Bravman*, 984 F.2d at 75; *Phelps v. Sherwood Med. Indus.*, 836 F.2d 296, 303 (7th Cir.1987); *Kirsch v. Picker Int'l, Inc.*, 753 F.2d 670, 671 (8th Cir. 1985); *Brooks*, 750 F.2d at 1231. This Court agrees with the Seventh Circuit, which noted in *Phelps*, that it could "find no principled basis" for making a distinction between prescription drugs and medical devices, and applying the learned intermediary doctrine only to situations involving the former, but not the latter. *Phelps*, 836 F.2d at 303. The Court finds that Medtronic had a duty to warn only the surgeon who implanted the Model 4082 lead into Mozes of the dangers associated with it.

In the instant case, it is undisputed that Medtronic warned Dr. Webb, the surgeon who implanted the Model 4082 lead into Mozes, of the dangers inherent in the lead. Moreover, it is undisputed that Medtronic informed Dr. Webb in the "Health Safety Alert" of its findings that the Model 4082 lead's performance was less than anticipated. Accordingly, the Court finds that Mozes has failed to create a genuine issue of material fact regarding whether Medtronic complied with its duty to warn the doctor who implanted Mozes' lead of the dangers associated with it. The Court, therefore, will grant Medtronic's Motion with respect to Mozes' claim for failure to warn.

### Conclusion

Accordingly, based on the foregoing, and upon all the files, records, and proceedings herein, **IT IS ORDERED** that:

(1) Plaintiff's Motion for Partial Summary Judgment (Doc. No. 20) is **DENIED**; and

(2) Defendant's Motion for Summary Judgment (Doc. No. 14) is **GRANTED**, and Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**