Ward HAUENSTEIN, Appellant,

v.

The LOCTITE CORPORATION, Respondent,

S.H. ANSELL COMPANY, Defendant and Third-Party Plaintiff,

v.

Michael P. REDMOND and Charles K Sumner, etc., Third-Party Defendants.

No. C4–82–1396.

Supreme Court of Minnesota.

April 20, 1984.

Ralph E. Koenig, and Michael L. Weiner, Minneapolis, for appellant.

R.D. Blanchard, Minneapolis, for respondent.

PETERSON, Justice.

This is a personal injury action brought by appellant, Ward Hauenstein, seeking damages for a serious injury sustained to one of his eyes while using Loctite Retaining Compound No. 35 (RC–35), an adhesive produced by respondent, The Loctite Corporation.[1] Hauenstein alleged that Loctite was strictly liable and liable in negligence solely for failure to warn Hauenstein that RC–35 contained acrylic acid and could cause blindness if it contacted eye tissue. The trial court submitted both theories to the jury. The jury made the following findings by special verdict:

1. Was [Loctite] negligent?  Yes.

2. Did [Loctite's] negligence cause the injury?  No.

3. Was the [RC–35] in a defective condition?  No.

4. Did the defective condition cause the injury?  Not applicable.

5. Was [Hauenstein] negligent?  Yes.

6. Did [Hauenstein's] negligence cause his injury?  No.

7. No apportionment by the jury of the parties fault.  (Not applicable.)

8. [Hauenstein] suffered damages of $200,000.

The trial court ordered judgment for Loctite based on these findings. Hauenstein moved the court for an amended verdict or a new trial, contending that the jury's special verdict findings were perverse, inconsistent, and irreconcilable. The appeal taken from the order denying that motion raises these issues:

1. Whether the special verdict finding that Loctite was negligent and the finding that there was no product defect are inconsistent as a matter of law.

2. Whether the finding that Loctite's negligence did not cause the injury is nevertheless dispositive of this case.

The events giving rise to this litigation are uncomplicated.  In May 1974, Ward Hauenstein took his Porsche automobile to a service garage to investigate an oil leak. He arranged to do most of the work himself.  He was cautioned to be careful with the garage's tools and equipment for his own safety.  While repairing the oil leak, he decided to tighten certain bolts under the engine that had a tendency to loosen. An employee of the garage recommended securing the bolts with RC–35.  Hauenstein read the label on the bottle and applied the RC–35 without incident.

Because the engine continued to leak oil, Hauenstein returned to the garage the following month.  He removed the engine and placed it on a work bench.  He thought that the oil leak might be caused by a faulty seal on the engine's oil cooler, so he removed the oil cooler and replaced the seals.  He reassembled the oil cooler and decided to secure the bolts with RC–35. When he first attempted to apply the RC–35, nothing appeared.  He looked at the nozzle to see if it was obstructed, and he may have wiped it with a rag.  He again attempted to apply the RC–35.  He leaned over the engine and directed the bottle of RC–35 toward the oil cooler bolts.  The oil cooler was between Hauenstein and the bottle of RC–35.  The bottle was in a position roughly parallel to the ground and presumably was pointed toward Hauensteins' body, with the nozzle about 12 inches from his face.  On this second at-

---

1. Hauenstein also named S.H. Ansell Company, the manufacturer of the applicator bottle used to package RC–35, as a defendant; the trial court directed a verdict in favor of the manufac-turer because Hauenstein failed to introduce evidence that the bottle was defective at the time it left the manufacturer's possession. Hauenstein does not appeal from this decision.

tempt, he squeezed the bottle more firmly and a quantity of RC–35 entered his eye.

Hauenstein testified that he thought the nozzle suddenly came off the bottle of RC–35. He stated that he "felt something let loose" as he was squeezing and "thought" he saw the nozzle fly toward his face in the instant before the RC–35 entered his eye. The owner of the garage testified that he "thought" the nozzle was still on the bottle after the accident. Hauenstein was unable to produce the bottle at trial.

RC–35 is advertised only in industrial publications, and it is available only through industrial product distributors. Loctite acknowledges, however, that anyone could buy RC–35 from a distributor.

RC–35 is a strong eye irritant containing 6.2% acrylic acid. Common chemical reference books listed acrylic acid as corrosive, hazardous, and a severe irritant; Loctite's test results indicated that RC–35 caused blindness in rabbits. Loctite did not place warnings on the containers of RC–35 sold in 1974 nor did it list the chemical ingredients. It gave three reasons for the absence of warnings. First, it stated that the normal conditions under which RC–35 is used would make eye contact impossible. According to Loctite, RC–35 could not come into contact with the user's eyes because the bottle *must* be turned upside down, away from the user's face, for the product to be dispensed drop by drop. The product is sold in a small plastic bottle with a press-fitted, clear plastic nozzle. Because the product must be kept in contact with air, the bottle is only half filled, and therefore, to dispense the product, the bottle must be turned upside down. RC–35 is a viscous liquid, the consistency of corn syrup. Very firm pressure must be used on the bottle to cause small drops to appear at the pinhole-sized opening in the nozzle. Loctite admitted that it was aware of instances where users pried the nozzle out of the bottle but stated that it was not aware of instances where the nozzle suddenly came off while the product was being dispensed.

Loctite's second reason for not placing warning labels on bottles of RC–35 was the product's history of safe use. Over 200,000 bottles of RC–35 were sold in the 8 years preceding Hauenstein's injury, and Loctite had never received reports of injuries from its use.

Loctite's third reason was that government regulations in effect at the time of Hauenstein's injury did not require warning labels on this type of product nor did chemical industry practices require such warnings. There was unrebutted testimony that standard procedure among industrial users is to presume that all chemicals are hazardous and should be handled accordingly.

1. The sole basis for Hauenstein's claim that Loctite was negligent and that its product was defective was that Loctite failed to warn him that RC–35 could injure his eyes. He contends that the finding that Loctite was negligent but that RC–35 was not defective cannot be reconciled and therefore requires a new trial. Loctite argues that the findings are consistent because the duty to warn in strict liability cases is different from the duty to warn in negligence cases. Whether there is a difference between the duty to warn in a strict liability case and the duty to warn in a negligence case is an issue of first impression in this state.

Several jurisdictions have recognized that the standard for the duty to warn in strict liability cases is based upon concepts of negligence. If the failure to warn is not negligent, the product is not "defective," and there is no strict liability. *See* Annot., 53 A.L.R.3d 239, 246 (1971). This parallel was noted in the dissenting opinion in *Holm v. Sponco Manufacturing, Inc.*, 234 N.W.2d 207 (Minn.1982): "As a practical matter, where the strict liability claim is based on * * * failure to warn * * * there is essentially no difference between strict liability and negligence." *Id.* at 215.

The jury instructions given in this case reflect this parallel. On the strict liability claim, the jury was instructed as follows:

A product is in a defective condition if, at the time it leaves the manufacturer's hands, it is in a condition which is unreasonably dangerous to the ordinary user.

A condition is unreasonably dangerous if it is dangerous when used by an ordinary user who uses it with the knowledge common to the community as to the product's characteristics and common usage.

The defect may be in the product itself, in its preparation, in its container or packaging, or in the instructions necessary for its safe use.

The negligence instruction focused on the duty to warn:

A manufacturer of goods has a duty to give a reasonable warning as to dangers inherent or reasonably foreseeable in using the goods in the manner specified. This duty applies even though the goods may not be used in their specified manner, so long as such use is one that the manufacturer should reasonably foresee.

Under both theories, Loctite's duty to warn was defined in terms of reasonableness. Notwithstanding the apparent inconsistency between the finding of negligence and the finding of no strict liability, Loctite contends that the two findings can nevertheless be reconciled because the duty to warn in strict liability extends only to the *ordinary* user (industrial users), while under a negligence theory, the duty extends to all *foreseeable* users. Loctite argues that the jury could have concluded that Hauenstein was a foreseeable user but not an ordinary user and that the failure to warn ordinary users was reasonable given industry procedures regarding the use of chemicals.

An interpretation that limits the duty to warn in product defect cases is contrary to our case law. In *Holm v. Sponco Manufacturing, Inc.*, 324 N.W.2d 207 (Minn. 1982), we cited authority to the effect that a manufacturer's duty regarding defective products extended to "anyone who is likely to be exposed to danger when the product is used in the manner for which the product was intended, as well as an unintended yet reasonably foreseeable use." *Id.* at 212.

■ We hold that a manufacturer's duty to warn in strict liability cases extends to all reasonably foreseeable users. We therefore conclude that the jury's finding that Loctite was negligent cannot be reconciled with its finding that the product was not defective. Inherent in this case is the problem of mixing ordinary negligence and strict liability where the only basis for liability is failure to warn. To avoid this problem in the future, we hold that hereafter, where a plaintiff seeks damages for both negligence and strict liability based solely upon failure to warn, the plaintiff may submit the case to the jury on only one theory. The plaintiff can plead and prove at trial either or both theories, but by the time the parties rest, the plaintiff must announce whether the case will be submitted to the jury on negligence or strict liability.

■ 2. The dispositive jury finding in this case, however, is its finding that Loctite's negligence did not cause Hauenstein's injury. It is well settled that we will set aside an answer to a special verdict question only when it is perverse and palpably contrary to the evidence. *Jacobs v. Rosemount Dodge-Winnebago South*, 310 N.W.2d 71, 76 (Minn.1981). A jury verdict will be overturned only if no reasonable mind could find as did the jury. *Belden Porter Co. v. Kimball Co.*, 303 Minn. 98, 99, 226 N.W.2d 310, 310 (1975) (citing *Standafer v. First Nat'l Bank*, 243 Minn. 442, 448, 68 N.W.2d 362, 366 (1955)). If the answers to special verdict questions can be reconciled on *any* theory, the verdict will not be disturbed. *Nihart v. Kruger*, 291 Minn. 273, 276, 190 N.W.2d 776, 778 (1971). The issue of causation is for the jury to decide, and its decision will stand unless manifestly contrary to the evidence viewed as a whole and in the light most favorable to the verdict. *Flom v. Flom*, 291 N.W.2d 914, 917 (Minn.1980); *Seivert v. Bass*, 288 Minn. 457, 466, 181 N.W.2d 888, 893 (1970).

The jury's finding of no causation in this case is not perverse and palpably contrary to the evidence; therefore the finding will not be disturbed. Based upon the evidence viewed as a whole, the jury properly could have concluded that a warning to avoid eye contact would not have induced Hauenstein to conduct himself any differently. He testified that he knew RC–35 was a strong chemical, with an unmistakable pungent odor, capable of permanently bonding metals. He admitted that he did not intend or expect to get RC–35 in his eye when he pointed the bottle toward himself. The jury reasonably could have disbelieved Hauenstein's testimony that he would have worn eyeglasses if he had been warned that RC–35 is an eye irritant.

Hauenstein's theory throughout the trial was that the injury was caused when the bottle nozzle suddenly came off and glue shot into his eye. If the jury accepted this theory and concluded that Hauenstein would not have acted differently even if there was a warning, they were correct in concluding that Loctite's negligent failure to warn was not the cause of Hauenstein's injury.

The jury also found that Hauenstein was negligent. Hauenstein argues that because the jury found that Hauenstein's negligence was not the cause of the injury, the findings on causation are irreconcilable. On the issue of causation, the jury was instructed as follows:

> A direct cause is a cause which had a substantial part in bringing about the injury. * * *

> There may be more than one direct cause of an accident. When the effects of negligent conduct of each of two or more persons actively work at substantially the same time to cause the accident, each may be a direct cause of the accident.

Neither of the parties objected to the instructions and no objection is made on appeal. Thus, the instructions as given must be regarded as the law of the case. *Lesmeister v. Dilly*, 330 N.W.2d 95, 100 (Minn. 1983).

Hauenstein was negligent either because he did not wear safety glasses or because he pointed the bottle toward his face. The jury had to decide whether either of these acts "had a substantial part in bringing about the injury." They could have concluded that Hauenstein's negligence contributed to bringing about the injury but that the contribution was not "substantial." It was reasonable for the jury to find that the only substantial cause was the bottle nozzle that suddenly came off. Even if the jury may have been wrong in its evaluation of "substantial" or in its application of the law of causation to Hauenstein's negligence, there is no evidence and no reason to conclude that its decision on causation with respect to Loctite's negligence was tainted.

The issue whether Loctite's negligence caused the accident involved a "but for" analysis—whether the accident would not have occurred but for Loctite's failure to warn. The jury reasonably concluded that the accident would have occurred whether or not there was a warning. The issue whether Hauenstein's negligence caused the accident, on the other hand, involved not only a determination whether there was a causal connection but whether there was some other cause that intervened between Hauenstein's negligence and the accident. The jury may have concluded that the flying nozzle was an intervening cause. Even if that conclusion were incorrect as a matter of law, the jury's error would in no way cast doubt on its determination of no causation with respect to Loctite's negligence.

Affirmed.

COYNE, J., took no part in the consideration and decision of this case.

YETKA, Justice (dissenting).

I respectfully dissent. In looking at the special verdict as a whole, I am convinced that the jury misunderstood the instruction on causation. The jury found that both plaintiff and defendant were negligent, but that neither party's negligence was a cause of the injury. Under the instruction on

causation given in this case, these findings cannot be reconciled.

If plaintiff was negligent, it was because he failed to wear eye protection while using RC–35 or because he pointed the bottle of RC–35 at his face while using it. In either case, a finding that his negligence was not a substantial factor in causing the injury was perverse and manifestly contrary to the evidence. The majority suggests that the findings of negligence, but no causation, are consistent if the jury decided that the nozzle popped out of the bottle and treated that occurrence as an "intervening cause." However, the jury was not instructed on intervening cause so it is impossible to rationalize the special verdict on these grounds. Furthermore, such an occurrence could not be an "intervening event" as a matter of law. Defendant demonstrated that RC–35 will only come out of the bottle in small drops; it is physically impossible for the product to spray out of the nozzle. Thus, if plaintiff was negligent in pointing the bottle at his person or failing to use eye protection, he was negligent precisely because of the possibility that the nozzle might pop out of the bottle. Such an occurrence was clearly within the scope of the risk created by plaintiff's negligence and cannot be considered an intervening event. *See* W. Prosser, Handbook of the Law of Torts § 44 at 281 (4th Ed.1971).

If the plaintiff was negligent, the jury clearly erred when it found that his negligence was not a cause of the accident. The majority is willing to ignore this error as long as there is support for the finding that *defendant's* negligence was not a cause. I think that when the verdict indicates a fundamental misunderstanding of the law of causation, all of the jury's findings on causation should be disregarded.

In *Nihart v. Kruger*, 291 Minn. 273, 190 N.W.2d 776 (1971), we said, "In reviewing the findings [in a special verdict], we need only examine the record to decide whether the verdicts are consistent on any theory. Only where it is clear that findings cannot be reconciled may the trial court set them aside." *Id.* at 276, 190 N.W.2d at 778. In this case, the majority cannot reconcile inconsistent findings so it simply ignores those findings that do not fit with its theory of the case. This approach makes our statement in *Nihart* meaningless. I would remand the case for a new trial on the issue of liability only.

TODD, Justice (dissenting).

I join in the dissent of Mr. Justice Yetka.