John MARCON, as parent and natural
guardian of Luke Marcon, a
minor, Respondent,

and

Group Health, Inc., Intervenor,

v.

KMART CORPORATION, a foreign
corporation, Appellant,

Paris Manufacturing Corporation, a
Maine corporation, Defendant.

No. C2–97–1319.

Court of Appeals of Minnesota.

Feb. 10, 1998.

Review Denied April 14, 1998.

Eric J. Magnuson, Jeanne H. Unger, Rider, Bennett, Egan & Arundel, L.L.P., Minneapolis, for respondent.

Arthur C. Kosieradzki, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for respondent.

Adam S. Wolkoff, Gilmore, Aafedt, Forde, Anderson & Gray, P.A., Minneapolis, for intervenor.

Bruce G. Jones, Scott W. Johnson, Faegre & Benson, L.L.P., Minneapolis, for appellant.

Robert T. Stich, James D. Knudsen, Stich, Angell, Kreidler & Muth, Minneapolis, for appellant.

Considered and decided by LANSING, P.J., and SCHUMACHER and FORSBERG, JJ.

## OPINION

THOMAS G. FORSBERG,* Judge.

Appellant Kmart Corporation challenges the trial court's ruling that Kmart is jointly and severally liable for injuries sustained by a child while riding on a sled sold by Kmart. We affirm.

## FACTS

On December 8, 1991, Luke Marcon, then 12 years old, and a younger brother and sister were sledding on a hill near their home. According to two eyewitnesses who testified at trial, Luke, at the time of the accident, was riding the sled on his knees down the hill. According to their testimony, as Luke approached the bottom of the hill, his sled struck a bump and stopped. Luke was thrown forward from the sled, landing

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

face down in the snow. As he landed, his body rotated over his head, fracturing his neck and leaving him a quadriplegic.

Respondent John Marcon, as parent and natural guardian of Luke, brought this product liability action against Paris Manufacturing Corporation and appellant Kmart Corporation, the manufacturer and seller, respectively, of the SnowMotion 760 plastic sled on which Luke was riding at the time of the accident. Respondent's complaint included claims against both defendants for strict liability failure to warn and negligent failure to warn.

At trial, Luke's mother testified that they had purchased the sled from Kmart and that there were no instructions or warnings on the sled. Also at trial, the court allowed Marcon to add an independent claim against Kmart for failure to test. The jury, by special verdict, found that the sled was not defective because of its design, but was defective because it "failed to provide adequate warnings or instructions for safe use." The jury also found that the failure to warn caused Luke's injuries. The jury attributed 100% of the causal fault for Luke's injuries to Paris Manufacturing and awarded $7,993,-473.63 in compensatory damages.

The trial court adopted the jury's findings and concluded that Kmart and Paris Manufacturing were, under strict liability, jointly and severally liable for the awarded damages. Kmart moved for judgment notwithstanding the verdict or a new trial. The trial court denied Kmart's post-trial motions and directed entry of judgment against Kmart and Paris Manufacturing in the amount of $8,314,893.96.[1] Judgment was entered on May 5, 1997, and Kmart now brings this appeal.

## ISSUES

I. Did the trial court err in ordering that judgment be entered against Kmart based on strict liability when the jury found that Kmart was not negligent or at fault?

II. Under Minn.Stat. § 604.02, subd. 1 (1996), can Kmart be held liable for more

than four times the percentage of fault allocated to it by the jury?

III. Did the trial court err in submitting the failure-to-warn claim to the jury?

## ANALYSIS

A reviewing court is not bound by and need not give deference to a trial court's decision on a purely legal issue. *Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n*, 358 N.W.2d 639, 642 (Minn.1984).

### I. Jury Found Kmart Not At Fault

On appeal, Kmart argues that the trial court erred in holding Kmart jointly and severally liable with Paris Manufacturing for all of respondent's damages. Kmart contends that because respondent failed to establish that Kmart was negligent or at fault, liability cannot be imposed.

### A. Strict Liability and Fault

No Minnesota court thus far has specifically stated that a seller who is found to be without fault is strictly liable in a failure-to-warn case. Minnesota courts, however, subject manufacturers to strict liability for injuries resulting from a defect in design or a failure to warn. *McCormack v. Hankscraft Co.*, 278 Minn. 322, 333–34, 154 N.W.2d 488, 497 (1967). Minnesota courts also have extended this liability to persons who sell products that are in a defective condition and harm a user, even if the seller was not negligent. *Farr v. Armstrong Rubber Co.*, 288 Minn. 83, 89, 179 N.W.2d 64, 68 (1970); *see also Frey v. Montgomery Ward & Co.*, 258 N.W.2d 782, 791 n. 4 (Minn.1977) (in strict liability case, "retailer is liable to the consumer even absent culpability on its part"). It logically follows that liability should be extended to those who sell products that are defective because they fail to warn, even if the seller was not found negligent.

Holding a seller strictly liable in failure to warn cases is consistent with *McCormack* and *Farr* as well as Minn.Stat. § 544.41, which states in relevant part:

Subdivision 1. In *any* product liability action based in whole or in part on strict

---

1. Paris Manufacturing declared bankruptcy before this action was brought.

liability in tort *commenced or maintained against a defendant other than the manufacturer,* that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage. * * *.

Subd. 2. Once the plaintiff has filed a complaint against a manufacturer and the manufacturer has or is required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant * * *.

The plaintiff may at any time subsequent to dismissal move to vacate the order of dismissal and reinstate the certifying defendant, provided plaintiff can show one of the following:

\* \* \* \*

(d) *That the manufacturer is unable to satisfy any judgment as determined by the court.*

Minn.Stat. § 544.41 (1996) (emphasis added). Although a nonmanufacturer defendant in a strict liability action can be absolved of its strict liability for injuries caused by a product defect over which it had no control, it cannot be absolved (and therefore remains strictly liable) if the manufacturer of that defective product is unable to satisfy the judgment.

Such is the case here. Paris Manufacturing declared bankruptcy before this suit was brought. Because the manufacturer is unable to satisfy the judgment, Kmart cannot be absolved of its strict liability for injuries caused by its sale of a defective product.

The application of strict liability to a seller in a failure to warn case is also consistent with the Restatement (Third) of Torts:

[T]he liability of nonmanufacturing sellers in the distributive chain is strict. It is no defense that they acted reasonably and did not discover a defect in the product, be it manufacturing, design, or failure to warn.

Restatement (Third) of Torts: Products Liability, § 1 cmt. a (Proposed Final Draft 1997). Thus, strict liability may be imposed on Kmart as the nonmanufacturing seller of a product that was defective in its failure to warn, regardless of whether Kmart was negligent.

■ Minnesota has adopted a three-part test to prove strict liability. The plaintiff must prove:

(1) that the defendant's product was in a defective condition unreasonably dangerous for its intended use, (2) that the defect existed when the product left the defendant's control, and (3) that the defect was the proximate cause of the injury sustained.

*Bilotta v. Kelley Co.,* 346 N.W.2d 616, 623 n. 3 (Minn.1984). All of the elements necessary to prove strict liability are present here. First, the jury found that the sled was "in a defective condition, unreasonably dangerous to the user because the product failed to provide adequate warnings or instructions for safe use." Second, the jury found that Kmart sold the plastic sled involved in the accident to Luke's parents. Third, the jury found that the defective condition was "a direct cause of Luke Marcon's injuries."

## B. Kmart Found Not Negligent

■ Kmart argues that it is inconsistent to impose strict liability on it when the jury found Kmart was not negligent. To make this argument, Kmart interprets the jury's finding that Kmart was not negligent to mean that it was not negligent for any failure to warn. Kmart further argues that because it has been absolved of a *negligent failure to warn,* under *Hauenstein v. Loctite Corp.,* 347 N.W.2d 272 (Minn.1984), it cannot be held *strictly liable for failure to warn.* In *Hauenstein,* the court held that a plaintiff may plead and prove both negligent and strict liability failure to warn, but may only submit the case to the jury on one or the other claim. *Id.* at 275. The jury's verdict, thus, is dispositive of both claims. *Id.* at 275–76.

In *Hauenstein,* however, failure to warn was the *only* theory underlying both the strict liability and negligence claims. Here, respondent brought strict liability and negligent *failure-to-warn* claims against Kmart and Paris Manufacturing and a negligent *failure-to-test* claim against Kmart alone. The jury's finding that Kmart was not negli-

gent does not necessarily mean the jury concluded that Kmart was not negligent for its failure to warn.

During the trial, respondent presented the deposition testimony of a Kmart sled buyer. The buyer testified that Kmart did have a test laboratory and that he was "sure" Kmart had tested the Paris sleds, including the SnowMotion 760. During the closing argument, counsel for both Kmart and respondent discussed Kmart's failure to test. Although the verdict form does not specify a failure to warn or a failure to test, it is logical, based on the testimony during trial and the closing argument references to failure to test, that the jury found that Kmart was not negligent for its failure to test the sled. Viewed in this light, the jury's finding that Kmart was not negligent (in its failure to test) is not inconsistent with its finding that the product was defective because of a failure to warn and the court's determination that Kmart was strictly liable as the seller of a defective product.

## II. Minn.Stat. § 604.02

■ Kmart argues that Minn.Stat. § 604.02 bars entry of judgment against Kmart for the amount of the compensatory award. Minn.Stat. § 604.02, subd. 1, states in part:

> When two or more persons are jointly liable, contributions to awards shall be in proportion to the percentage of fault attributable to each, except .that each is jointly and severally liable for the whole award. * * * [A] person whose fault is 15 percent or less is liable for a percentage of the whole award no greater than four times the percentage of fault * * *.

Minn.Stat. § 604.02, subd. 1 (1996). According to Kmart, because the jury found Kmart to be 0% at fault, it should be liable for 0% of the total award.

In Minn.Stat. § 604.02, the legislature enacted rules governing the apportionment of damages in actions involving fault. Subdivision 1 covers situations "when two or more persons are jointly liable." Subdivision 2 provides for a reallocation of any uncollectible amount of a party's equitable share of the obligation. Subdivision 3 specifically addresses product liability actions:

> In the case of a claim arising from the manufacture, sale, use or consumption of a product, an amount uncollectible from any person in the chain of manufacture and distribution shall be reallocated among all other persons in the chain of manufacture and distribution but not among the claimant or others at fault who are not in the chain of manufacture or distribution of the product. Provided, however, that a person whose fault is less than that of a claimant is liable to the claimant only for that portion of the judgment which represents the percentage of fault attributable to the person whose fault is less.

Minn.Stat. § 604.02, subd. 3.

Subdivision 3 is applicable here. The claim arises from the manufacture and sale of a product, and there is an amount uncollectible from the bankrupt manufacturer. Under subdivision 3, the amount uncollectible from Paris Manufacturing must be allocated to Kmart, the only other person in the chain of manufacture and distribution. Because subdivision 3 is applicable, subdivision 1 (and the 15% rule) does not apply. *See* Michael K. Steenson, *Joint and Several Liability: Minnesota Style*, 15 Wm. Mitchell L.Rev. 969, 979 (1989) ("it appear[s] that the [15% rule] does not apply to products liability cases covered in section 604.02, subdivision 3").

## III. Presentation of Failure–to–Warn Issue to Jury

■ Kmart argues that the trial court should not have submitted Marcon's failure-to-warn claim to the jury because there was, as a matter of law, no duty to warn.

■ When a manufacturer or seller knows, or should anticipate, that a product might be used in a manner that will increase the risk of injury, and the risk is not one normally comprehended by the user, there is a duty to warn. *Germann v. F.L. Smithe Mach. Co.*, 395 N.W.2d 922, 925 (Minn.1986) (citing *Bilotta*, 346 N.W.2d at 621; *Holm v. Sponco Mfg., Inc.*, 324 N.W.2d 207, 212 (Minn.1982); *Frey*, 258 N.W.2d at 786; *Clark v. Rental Equip. Co.*, 300 Minn. 420, 426, 220 N.W.2d 507, 511 (1974)).

Here, two experts for respondent testified at trial about the "dig and flip" danger associated with kneeling on a sled. They testified that when a child kneels on a sled, the child is more likely to slide forward on the sled as it moves down the hill. With the child's weight toward the front, the front end of the sled is heavier and more likely to "dig" into the snow, bringing the sled to an abrupt stop. They also testified that a kneeling rider is more likely than a seated rider to "flip" forward if the sled does suddenly stop. One expert testified that the SnowMotion 760 was unreasonably dangerous due to its design and lack of adequate warnings and that the "dig and flip" danger was foreseeable. The jury also heard testimony that manufacturers of other sleds included warnings that riders must sit upright when riding on their sleds.

The former president of Paris Manufacturing testified by deposition that although the SnowMotion 760 was designed to be used while sitting, he knew children were using the sled in a kneeling position. Luke's parents testified that they were unaware of the increased risk posed by kneeling on a sled, and Luke testified that he did not know it was more dangerous to ride a sled in a kneeling position.

The record shows that Paris Manufacturing knew that children were using the sled in a kneeling position, that it should have known that this use could increase the risk of injury, and that the risk was not comprehended by the user. The trial court properly submitted the issue to the jury.

### DECISION

The trial court did not err in concluding that as a matter of law Kmart and Paris Manufacturing were jointly and severally liable for the awarded damages.

**Affirmed.**