*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0021A (6th Cir.)
File Name:  00a0021a.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LAURA HOLLISTER,
      *Plaintiff-Appellant,*

AMERICAN COMMUNITY
MUTUAL INSURANCE
COMPANY,
      *Intervenor,*

    *v.*

DAYTON HUDSON
CORPORATION,
      *Defendant-Appellee.*



98-1660

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 96-73142—John Feikens, District Judge.

Argued:  August 4, 1999

Decided and Filed:  January 13, 2000

1

Before:  SILER and GILMAN, Circuit Judges; GRAHAM, District Judge.[*]

————————————

**COUNSEL**

**ARGUED:**  Steven P. Handler, McDERMOTT, WILL & EMERY, Chicago, Illinois, for Appellant.  Barry B. Sutton, HARVEY & KRUSE, Troy, Michigan, for Appellee. **ON BRIEF:**  Steven P. Handler, Charles M. Gering, McDERMOTT, WILL & EMERY, Chicago, Illinois, Robert P. Lynn, Jr., Mineola, New York, for Appellant.  Barry B. Sutton, Dennis M. Goebel, HARVEY & KRUSE, Troy, Michigan, for Appellee.

————————————

**AMENDED OPINION**

————————————

   RONALD LEE GILMAN, Circuit Judge.  Laura Hollister, a citizen of Michigan, was severely burned when the shirt that she was wearing ignited upon contact with a hot electric burner on her apartment stove.[1]  She brought a lawsuit against Dayton Hudson Corporation, the Minnesota-based owner of the department store where the shirt was purchased, alleging negligence and breach of the store's implied warranty of merchantability.  Her claims were based on allegations that (1) the shirt's design rendered it unreasonably dangerous, and (2) the shirt failed to carry a warning as to its extreme flammability.  The district court granted Dayton Hudson's

————————————

   [*]The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

   [1]This case is the subject of an earlier opinion.  *See Hollister v. Dayton Hudson Corp.*, 188 F.3d 414 (6th Cir.1999).  Upon Hollister's petition for rehearing, the panel is persuaded that the earlier opinion should be withdrawn and this opinion substituted.

motion for summary judgment, concluding that Hollister had not established a prima facie case of design defect under Michigan law, and that any duty to warn was obviated by the open and obvious nature of the alleged defect.

Contrary to the decision of the district court, we believe that Hollister has adduced sufficient evidence to allow a reasonable juror to conclude that the shirt sold by Dayton Hudson was defective because of its failure to carry a warning regarding its extreme flammability. Although Hollister has failed to show any negligence on Dayton Hudson's part regarding this alleged defect, she need only establish a prima facie case that the shirt was defective and that it caused her injuries in order to pursue her claim for breach of implied warranty. We therefore **AFFIRM** the district court's entry of summary judgment on Hollister's negligence claim, **REVERSE** its entry of summary judgment on Hollister's breach of implied warranty claim to the extent that the claim is based upon a failure to warn, and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. The accident

In November of 1995, Hollister was a business student at Northwestern University in Evanston, Illinois. On November 4, 1995, she attended a business-school party with her friend Jerome Joliet. She later returned to her apartment accompanied by another friend, Diarmuid O'Connell, at approximately 1:45 a.m. the next morning. According to O'Connell, Hollister was intoxicated when the two left the party. O'Connell departed from Hollister's apartment at approximately 2:10 a.m.

Hollister has no memory of subsequent events. The next thing that she can recall is seeing herself in the mirror at approximately 9:30 a.m. on November 5. Realizing that she was injured, Hollister phoned her parents in Michigan. According to Hollister's parents, she repeated the words "fire, burner, pasta." Hollister's parents asked her for the number

of a friend and she supplied O'Connell's. After leaving a message on O'Connell's machine, Hollister's father asked his daughter for another number, and she supplied Joliet's. Mr. Hollister then left a message on Joliet's machine. Joliet arrived at Hollister's apartment at about 10:00 a.m. that day, discovered that Hollister was severely burned, and called 911. Evanston Fire Department paramedics came immediately and treated Hollister.

One of the paramedics found that the right front and rear burners of Hollister's stove were glowing red when he arrived. There was a bowl of cooked pasta in the sink, and a pot sitting on the stove between the burners. The fire department report concludes that the fire began in the kitchen. At the request of the fire department, the United States Bureau of Alcohol, Tobacco, and Firearms (BATF) assisted in investigating the accident. The BATF report also indicates that the fire began in the kitchen. It concludes that the accident most likely occurred when Hollister reached for something in the cabinet above the stove (the door to which was open) and her shirt-tail, which was hanging loose, brushed against the burner and ignited. Hollister next apparently attempted to smother the flames on the counter, where burned cloth was found. The report states that there was evidence that she then attempted to extinguish the flames with water from the bathtub. There was evidence that after doing so, Hollister rested on her bed, where more burned clothing and body fluids were found. Small remnants of Hollister's shirt, a brown and black plaid button-down, were found. Hollister's mother stated that she had purchased this shirt for Hollister at a Dayton Hudson's department store six years earlier. Hollister was also wearing a T-shirt and bra under the large plaid shirt at the time of the accident. The report concludes that "the cause of this fire should be classified as accidental caused by ignition of the victim's clothing by the stove burner while she was cooking."

Hollister was brought to Evanston Hospital, where she was treated for third-degree burns over fifty-five percent of her body. She was later transferred to Loyola Hospital in

on Hollister's breach of implied warranty claim to the extent that the claim is based upon a failure to warn, and **REMAND** for further proceedings consistent with this opinion.

jury is entitled to consider any other relevant evidence on the issue." *Howard*, 601 F.2d at 138.

This last holding is particularly significant because Dayton Hudson cites the fact that the exemplar fabric met federal flammability standards as a factor supporting the grant of summary judgment. Although such evidence would undoubtedly be relevant evidence for Dayton Hudson to introduce at trial, it is not dispositive of Hollister's claim at this stage. *See id.*; *Wilson v. Bradlees of New England, Inc.*, 96 F.3d 552 (1st Cir. 1996) (holding that evidence of a garment meeting the federal flammability standards was relevant to, but not dispositive of, plaintiff's claims).

We therefore conclude that Hollister has established a prima facie case against Dayton Hudson for breach of implied warranty based upon a failure to warn, and that the district court erred in entering the grant of summary judgment on this claim. This is not to say, however, that Hollister will necessarily prevail at trial. She will still have to convince a jury that the shirt was considerably more flammable than a reasonable consumer would expect. *See Glittenberg*, 491 N.W.2d at 212-13. She will also have to convince a jury that the lack of a warning on the shirt was a proximate cause of her injuries. *See Moll v. Abbott Labs.*, 506 N.W.2d 816, 824 (Mich. 1993). Finally, if Hollister does establish liability, the damages that Hollister sustained will be diminished in proportion to any amount of negligence attributed to her by the jury. *See* M.C.L. § 600.2949; *Karl v. Bryant Air Conditioning Co.*, 331 N.W.2d 456, 462 (Mich. 1982) (holding that the Michigan comparative negligence statute applies to breach of implied warranty actions). These hurdles are likely to be significant ones. We are convinced, however, that Hollister has the right to proceed to the next stage of the litigation.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the district court's entry of summary judgment on Hollister's negligence claim, **REVERSE** its entry of summary judgment

Chicago, where she stayed until December 21, 1995. After treatment at Loyola, Hollister was transferred to the University of Michigan Medical Center in Ann Arbor, Michigan, where she remained until April 17, 1996.

As a result of her burns, Hollister has undergone comprehensive skin grafting to most of her upper body, as well as plastic and reconstructive surgery. She remains profoundly disfigured. Her medical expenses at the time of the district court's ruling in May of 1998 amounted to approximately $980,000.

### B.   Procedural background

On March 27, 1996, Hollister's parents filed suit in the Circuit Court of Wayne County, Michigan. Named as defendants were Dayton Hudson (the parent company of the department store where the shirt was purchased), Ralph Lauren (the company that Hollister's mother originally believed was the manufacturer of the shirt), Banana Republic (the retailer of the T-shirt), Victoria's Secret (the retailer of the bra), and General Electric (the manufacturer of the stove). The complaint alleged that the shirt was defective because it was extremely flammable and because it did not provide a warning of this condition. On July 11, 1996, the case was removed to the United States District Court for the Eastern District of Michigan on the basis of diversity of citizenship. Pursuant to a July 31, 1997 motion, Hollister was substituted for her parents as the plaintiff.

On August 1, 1997, the district court held a status conference with all of the parties. At that time, the court noted that in the 16 months that the case had been in existence, a "whole lot of nothing" had taken place. At that point, Hollister had arranged for no expert witnesses other than a consultant who was going to conduct tests of various fabrics. The court directed Hollister to secure and disclose her experts, pursuant to Rule 26 of the Federal Rules of Civil Procedure, by September 1, 1997. A discovery deadline of October 31, 1997 was also set.

On September 1, 1997, Hollister submitted reports pursuant to Rule 26 from the following four experts: David Hall (textile expert), Edmund Knight (expert on cause and origin of the fire), Anna Dutka (economic damages expert), and Alan Hedge (stove design expert). Dr. Hall's report stated that he was still looking for "exemplar" fabric identical to the rayon used in the shirt in question, and that in his opinion the fabric was dangerously flammable. The report identifies the fabric as 100% rayon, loosely woven with 1.5 denier threads.

Dr. Hall offered no opinion as to the feasibility of using a different fabric to construct a similar shirt, and acknowledged that he had no expertise in the use of fabrics in clothing. He initially testified that the flammability test promulgated by the Consumer Products Safety Commission (CPSC), set forth in 16 C.F.R. § 1610, determines whether a fabric is "unreasonably dangerous." The regulation's purpose is "to reduce danger of injury and loss of life by providing, on a national basis, standard methods of testing and rating the flammability of textiles and textile products for clothing use, thereby discouraging the use of any dangerously flammable clothing textiles." 16 C.F.R. § 1610.1. Because their products passed the CPSC flammability test, Banana Republic and Victoria's Secret were eventually dismissed as defendants. Although Dr. Hall never tested the shirt remnants pursuant to 16 C.F.R. § 1610, Dayton Hudson's expert did. The fabric passed the test. Despite this fact, Dayton Hudson remained as a defendant. By October of 1997, Hollister had dismissed all of the other remaining parties.

In his deposition on October 31, 1997, Dayton Hudson's causation expert, John Campbell, acknowledged that he had located an "exemplar" shirt composed of fabric identical to that used in the shirt involved in the accident. Hollister's counsel subsequently purchased identical shirts to the one that Campbell had identified, and gave them to Dr. Hall for examination and testing.

Dr. Hall determined that the characteristics of the exemplar fabric were substantially identical to the shirt that Hollister

that the robe's unexpected flammability was a proximate cause of her injuries. *See id*. at 592.

The Fourth Circuit's decision in *Howard v. McCrory Corp.*, 601 F.2d 133 (4th Cir. 1979), is also instructive. In that case, a products liability action was brought by a mother whose infant son was fatally burned when his pajamas and bathrobe inexplicably caught fire. The mother sued the manufacturer and the retailer of the infant's pajamas, as well as the manufacturer and the retailer of his bathrobe, alleging strict liability, negligence, and breach of implied warranty. Judgment as a matter of law was entered in favor of the two retailers. The Fourth Circuit reversed for two distinct reasons, both of which are relevant to the instant case.

The district court had entered judgment in favor of Kresge, the retailer of the pajamas, because the plaintiff presented no expert testimony regarding the pajamas' flammability, only offering eyewitness testimony that the pajamas had ignited quickly and burned very rapidly. In reversing, the Fourth Circuit wrote:

> It has been held that, even where all the standard tests demonstrated that a product was not dangerously inflammable for use by infants, it is perfectly permissible for the jury to find that the product was dangerously inflammable from . . . proof that the product "ignited easily, (and) burned rapidly and intensely with a high degree of heat."

*Howard*, 601 F.2d at 137 (citing *LaGorga*, 275 F. Supp. at 378).

McCrory, the retailer of the bathrobe, was granted judgment notwithstanding the verdict on the grounds that remnants of the robe had been tested and found to meet the standards of Class I fabrics under the CPSC flammability test. The Fourth Circuit reversed this holding as well, reasoning that "[c]ompliance with federal standards, while plainly relevant, is not conclusive on the issue of McCrory's liability and the

expert, the exemplar fabric ignited instantly and burned completely within six seconds. Of the fourteen comparison samples, eleven failed to ignite at all when passed over a burner at the same rate. The three samples that did ignite were another 100% rayon sample and a rayon-polyester blend, both of which burned in about twelve seconds, and a piece of newspaper, which burned in four seconds. Thus the exemplar fabric burned twice as quickly as other rayon fabrics, and only two seconds slower than a piece of newspaper. A reasonable juror could conclude from this evidence that the shirt's manufacturer had a duty to know that the shirt possessed a latent danger, and a corresponding duty to warn consumers of that danger.

Once a plaintiff establishes that a product is defective—whether because of its design or because of a failure to warn—she must then demonstrate that this defect was a proximate cause of her injuries in order to make out a claim for breach of implied warranty. *See Piercefield*, 133 N.W.2d at 134. Hollister's mother stated in an affidavit that she would not have bought the shirt for her daughter if she had known that the shirt was extremely flammable, and Hollister herself maintained in an affidavit that she would not have worn the shirt in question if she had possessed such knowledge. A reasonable jury could find, based on this evidence, that the shirt's failure to carry a warning was a proximate cause of Hollister's injuries.

In *Deffebach v. Lansburgh & Bro.*, 150 F.2d 591 (D.C. Cir. 1945), the D.C. Circuit addressed a fact pattern quite similar to the one before us. That case involved an implied warranty claim against a non-manufacturing retailer who sold the plaintiff a chenille robe. Ignited by a spark as the plaintiff attempted to light a cigarette, the robe caught fire and burned explosively. The district court granted judgment as a matter of law to the retailer. On appeal, the D.C. Circuit reversed, holding that judgment as a matter of law was inappropriate because the plaintiff had produced evidence to satisfy both elements of an implied warranty claim—she had demonstrated that the robe was dangerously flammable and

had been wearing at the time of the accident. He then conducted a test comparing the exemplar fabric with fourteen other fabrics. The test utilized a stove-top electric burner set at 1100-1160 degrees, and involved sweeping 3.5 by 10-inch strips of the various fabrics across the burner. Hall then timed the rate of ignition and burning. The exemplar fabric ignited immediately, and burned completely within six seconds. Eleven of the fourteen non-exemplar samples failed to ignite at all. The three samples that did ignite were another 100% rayon sample, a rayon-polyester blend (both of which took about twelve seconds to burn completely), and a piece of newspaper (which burned in four seconds).

At the close of discovery, Dayton Hudson moved for summary judgment. One ground focused upon the requirement that a plaintiff such as Hollister must prove the effectiveness of a proposed alternative design. In response, Hollister acknowledged that she would not be calling an expert witness on the effectiveness of an alternative design. She claimed that this was a question of fact for the jury that did not require expert testimony. The district court subsequently held a hearing on January 5, 1998 to clarify Hollister's position, stating as follows:

> THE COURT: —you say that this is so clear, the risk of severe injury from a highly flammable fabric is so manifest, that no expert testimony is needed. That— that really made me open my eyes. You mean we can simply impanel a jury, and you can put on your proof without any testimony to show this?
>
> . . .
>
> MR. HANDLER: We mean it.

The district court then presented the parties with a list of six requirements necessary to establish a prima facie case of design defect under Michigan law.

After briefing by both parties, the district court granted Dayton Hudson's motion for summary judgment on May 12, 1998. Hollister timely filed her notice of appeal to this court.

## II. ANALYSIS

### A.  Standard of review

We review de novo the district court's grant of summary judgment. *See, e.g.*, *Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997). Summary judgment is appropriate when there are no issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The judge is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A genuine issue for trial is presented when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252.

### B.  The district court properly disposed of Hollister's claims based on negligence, but erred in failing to separately consider Hollister's breach of implied warranty claim

Hollister's original complaint asserts two distinct causes of action—negligence and breach of implied warranty. The former is a tort action and the latter is an action for breach of contract. In evaluating Hollister's claims, however, the district court did not distinguish between the two. The district court's summary disposition of Hollister's negligence claim was proper. Hollister failed to offer any evidence of negligence on Dayton Hudson's part, such as proof that the retailer knew of the shirt's extreme flammability or that it had received consumer complaints about the shirt in the past. An implied warranty claim, on the other hand, does not require a plaintiff to prove that the retailer was negligent—only that the product was defective and that the defect caused her injury.

Hollister has not been particularly helpful in bringing this distinction to the court's attention. Indeed, in her appellate

exercise reasonable care to inform consumers of the danger. *See Glittenberg*, 491 N.W.2d at 212-13 (holding that the dangers of diving headfirst into a manufacturer's aboveground swimming pool were open and obvious). If a product's danger is open and obvious to a reasonable consumer, the manufacturer has no duty to warn. *See id.* at 213. In such a case, a retailer who sells the product cannot be found liable for breach of implied warranty because the product is not defective.

The district court disposed of Hollister's failure to warn argument in a cursory manner, concluding that the danger inherent in having clothing come into contact with a hot stove is "open and obvious." We find this analysis to be oversimplified. It is true that a reasonable person would know that clothing is flammable; the question, however, is one of degree. *See Michigan Mut. Ins. Co. v. Heatilator Fireplace*, 366 N.W.2d 202, 205 (Mich. 1985) (holding that even if a reasonable consumer would know that covering the vents on a fireplace presented a "vague danger," a jury might still reasonably find that a warning was required to give the consumer "a full appreciation of the seriousness of the life-threatening risks involved"). A consumer might reasonably be expected to know that a rayon shirt will catch fire more easily and burn more quickly than a shirt made of heavy flannel. An ordinary consumer would have no way of knowing, however, that a particular rayon shirt was substantially more combustible and flammable than another rayon shirt. *Cf. LaGorga v. Kroger*, 275 F. Supp. 373 (W.D. Penn. 1967) (denying a retailer's motion for judgment as a matter of law where the plaintiff charged the retailer with breach of implied warranty for selling him a jacket that was unusually flammable and lacked a warning, noting that "[t]he public cannot be expected to possess the facilities or technical knowledge to apprehend inherent or latent dangers"), *aff'd*, 407 F.2d 671 (3d Cir. 1969).

Hollister presented credible evidence that the exemplar fabric burned explosively, like newspaper, and that other comparable fabrics did not. In tests conducted by Hollister's

safer manner.  The category of failure to warn, on the other hand, applies to a product that may be designed in an optimally safe way, but nevertheless bears a latent danger that would not be apparent to an ordinary consumer.  For example, without a warning as to its weight restrictions, a highway bridge might be legally "defective" even if it was designed safely and was in perfect working order.  *See Wilson v. Bradlees of New England, Inc.*, 96 F.3d 552, 559 (1st Cir. 1996).  Similarly, a prescription drug might be well designed and effective for its intended use, but it would nevertheless be legally "defective" if it lacked appropriate warnings as to its proper dosage and possible side effects.  *See* Restatement (Second) Torts § 402A, comment h (1972); *see also Barry v. Don Hall Labs.*, 642 P.2d 685, 688 (Or. Ct. App. 1982) (holding that properly manufactured vitamins might still be found defective due to the absence of a warning as to their high sugar content).

Under Michigan law, design defect claims and failure to warn claims are governed by distinct analyses.  *See Gregory v. Cincinnati Inc.*,  538 N.W.2d 325, 329 (Mich. 1995) (holding that a manufacturer's failure to warn can support a product liability claim "even if it the design chosen does not render the product defective."); *Glittenberg v. Doughboy Recreational Indus.*, 491 N.W.2d 208, 216 (Mich. 1992) (cautioning that "design defect analysis must not be used to evaluate failure to warn claims").  In the present case, the most relevant difference between the two claims is that a prima facie case of design defect requires that the plaintiff propose a reasonable alternative design, but a failure to warn claim does not.  Thus Hollister's failure to propose a safer, alternative design for the rayon blouse, which was fatal to her design defect claim, does not support a grant of summary judgment against her claim for failure to warn.

In order to establish, under Michigan law, that a product is defective due to a failure to warn, a plaintiff must demonstrate that a manufacturer (1) had actual or constructive knowledge of the alleged danger, (2) had no reason to believe that consumers would know of this danger, and (3) failed to

brief, she incorrectly states that "[u]nder Michigan law, negligence and breach of warranty claims for design defect in product liability cases are judged by the same standard, *i.e.*, a pure negligence risk-utility test."  Thus, Hollister has argued her two causes of action as if the negligence standard governed both.

Hollister's and the district court's confusion as to the appropriate legal standard most likely stems from the fact that, in cases where a seller is also the manufacturer, Michigan courts have observed that claims of negligence and breach of implied warranty are, for all intents and purposes, identical.  The reason for this confluence is that a plaintiff alleging breach of implied warranty on the part of a seller must show that the purchased product was defective.  That showing, in turn, requires proof that the product's manufacturer acted negligently, typically by omitting a safety feature or in failing to give warning of a latent danger.  A suit for breach of implied warranty against a seller who is also the manufacturer will therefore require the same showing of negligence on the defendant's part as an ordinary products liability suit against a manufacturer.  *See Prentis v. Yale Mfg. Co.*, 365 N.W.2d 176, 186 (Mich. 1984); *Smith v. E. R. Squibb & Sons, Inc.*, 245 N.W.2d 52, 56 (Mich. Ct. App. 1976), *aff'd*, 273 N.W.2d 476 (Mich. 1979)

When the defendant is a *non*-manufacturing seller, however, the two analyses diverge.  *See Prentis*, 365 N.W.2d at 186 n.30 ("Thus . . . the only time the distinction between implied warranty and negligence may have any significance in design defect cases, is in determining the liability of a seller who is not also the manufacturer of a product.").  Because the existence of a defect is generally determined by the negligent conduct of the manufacturer, a retailer may be held liable for breaching its implied warranty of merchantability by selling a defective product, even if the retailer's conduct is wholly free from negligence.  *See Johnson v. Chrysler Corp.*, 254 N.W.2d 569, 571 (Mich. Ct. App. 1977) (reversing a directed verdict in favor of the retailer of a defective power punch press, even though the retailer was not negligent); *Piercefield*

*v. Remington Arms Co.*, 133 N.W.2d 129, 134 (Mich. 1965) (holding that a breach of implied warranty claim relating to the sale of a defective shotgun shell could be established without proof of negligence on the part of the retailer). *Cf. Marcon v. Kmart Corp.*, 573 N.W.2d 728 (Minn. Ct. App. 1998) (affirming a verdict against the non-negligent seller of a sled, which was found to be defective because it lacked a warning advising riders not to kneel).

As noted above, Hollister has not argued at any stage of this litigation that her implied warranty claim requires distinct treatment from her negligence claim. Hollister's implied warranty claim, however, has been properly raised both below and on appeal—it was simply analyzed under the wrong legal standard. Ultimately, it is the district court's responsibility to apply the proper legal standard, regardless of the misconceptions by the parties. *See Industrial Development Bd. v. Fuqua Indus. Inc.*, 523 F.2d 1226, 1240 (5th Cir. 1975) ("[A] trial court has the ultimate responsibility to apply the law to the uncontested facts before it."); *Troupe v. Chicago, D. & G. Bay Transit Co.*, 234 F.2d 253, 261 (2d Cir. 1956) (Frank, J., concurring) ("A litigant surely has the right to assume that a federal trial judge knows the elementary substantive legal rules, long established by the precedents, and that therefore the judge will act accordingly, without prompting by the litigant's lawyer."). We will therefore independently consider and apply the proper analysis to Hollister's implied warranty claim. *See Empire Life Ins. Co. v. Valdak Corp.*, 468 F.2d 330, 334 (5th Cir. 1972) ("Here, however, it is not one of the parties seeking to advance a new theory, rather, it is this court, in fulfillment of its duty to apply the correct law, that is seeking to put the case back on the right track.").

## C.   Breach of implied warranty

A plaintiff seeking to recover on a claim against a retailer for breach of implied warranty must establish two elements: (1) that the product was sold in a defective condition, and (2) that the defect caused her injury. *See Piercefield,* 133 N.W.2d

shooting above the shoulders of an exemplar shirt that her expert burned in its entirety. Hollister's demonstration that the shirt would burn quickly and intensely, coupled with the CPSC's report on hospitalization from clothing burns, creates a question of fact for the jury on the issues of severity and foreseeability.

As yet another alternative ground for its holding, the district court opined that Hollister's own actions would preclude her from relief based on her alleged misuse of the clothing. Manufacturers, however, have a duty to warn consumers of the dangers associated with foreseeable misuses of the products they produce. *See Shipman v. Fontaine Truck Equip. Co.*, 459 N.W.2d 30, 33 (Mich. Ct. App. 1990) (reversing a trial court's entry of judgment notwithstanding the verdict in favor of the manufacturer of a feed truck, where there was evidence suggesting that the manufacturer reasonably could have foreseen the unsafe modification that the plaintiff made to the truck). As noted above, the CPSC study at least demonstrates the existence of a genuine issue of material fact as to whether accidentally brushing a stove burner, as Hollister did, is a foreseeable misuse of clothing.

2.   *Hollister successfully established a prima facie case that the shirt was defective because it lacked a warning regarding its extreme flammability*

Hollister's second basis for asserting that the shirt was defective, and therefore sold in breach of Dayton Hudson's implied warranty of merchantability, is her claim that the shirt required a warning regarding its extreme flammability. Dayton Hudson counters that for Hollister to make out a failure to warn claim, she must first show that the shirt was defectively designed. It therefore maintains that Hollister's inability to establish a prima facie case of design defect is necessarily fatal to her claim. We find that Michigan law is contrary to Dayton Hudson's argument.

Conceptually, the two claims identify different types of defect. A design defect is the mark of a poorly designed product, which could reasonably have been designed in a

report indicates that kitchen ranges are a common source of ignition in accidents involving burning apparel. In fact, the report refers to precisely the type of accident that occurred in the present case:

> Kitchen ranges were the second most common ignition source. Ignition occurred most frequently when adults were leaning against or reaching across a range while wearing shirts/blouses, when children were climbing on or playing with ranges while wearing pajamas, and when elderly women were cooking while wearing robes or housecoats.

Also included in the report are statistics showing the number of injuries, by age group, that result from shirts' igniting on stove tops. In concluding that Hollister had not presented sufficient evidence regarding the magnitude of the risk involved, the district court noted that the CPSC report was from 1985, four to five years before Hollister's mother purchased the shirt in question. It did not explain, however, why the date of the report invalidates it as evidence. The district court then analyzed the statistics contained in the CPSC report and determined that there would be 123 injuries per year to persons in Hollister's age group that might match the severity of the injury that she incurred. It concluded, without citation or explanation, that "these are small numbers indeed." The district court thus judged the sufficiency of the evidence presented, which is generally a question for the jury, not the court. *See Zettle,* 998 F.2d at 360.

The CPSC report also considered the severity of injuries that result when clothing catches fire: "Over one third of all clothing-related burn victims were hospitalized. This fact becomes dramatic when compared to the 4 percent hospitalization rate for all consumer product-related injuries . . . and the 8 percent reported for all burn injuries." Furthermore, Hollister presented evidence that the fabric in question would ignite upon contact with an electric burner and be consumed within seconds. In addition to the test comparing strips of fabric, her videotape shows the flames

at 134. Hollister contends that the shirt in question was defective because it was made of a fabric that was dangerously flammable (design defect) and because it should have carried a warning advising wearers of its extreme flammability (failure to warn).

1. *Hollister failed to establish a prima facie case of design defect*

   a. The district court applied the proper analysis to Hollister's allegations of design defect

Hollister argues on appeal that the district court held her to a higher burden than is required by the Michigan courts. The district court restated the Michigan law on design defect as requiring Hollister to produce evidence showing:

(1) that the severity of the injury was foreseeable by the manufacturer;

(2) that the likelihood of occurrence of her injury was foreseeable by the manufacturer at the time of distribution of the product;

(3) that there was a reasonable alternative design available;

(4) that the available alternative design was practicable;

(5) that the available and practicable reasonable alternative design would have reduced the foreseeable risk of harm posed by defendant's product; and

(6) that omission of the available and practicable reasonable alternative design rendered defendant's product not reasonably safe.

Our review of the district court's formulation convinces us that its restatement of Michigan law was correct. The test applied by Michigan courts to design defect claims is set out

in *Reeves v. Cincinnati, Inc.*,  439 N.W.2d 326, 329 (Mich. Ct. App. 1989).  Steps one and two of the district court's test—the foreseeability of serious injury and the likelihood that injury would occur—echo the language of *Reeves*, which held that "a prima facie case of a design defect premised upon the omission of a safety device requires first a showing of . . . the likelihood of occurrence of the type of accident . . . and the severity of injuries sustainable from such an accident." 439 N.W.2d at 329.

Steps three, four, and five required Hollister to present evidence that a reasonable design alternative was available, that it was practicable, and that it would have reduced the risk of the accident at issue in the case.  These requirements parallel the second half of the *Reeves* test, which calls for "a showing of alternative safety devices and whether those devices would have been effective as a reasonable means of minimizing the foreseeable risk of danger." *Id.*

Finally, step six of the district court's test, requiring that the product must be unreasonably dangerous in the absence of the alternative design, simply states the logical conclusion of steps one through five.  We therefore conclude that the district court applied the correct test in adjudicating Dayton Hudson's motion for summary judgment based upon design defect.

  b.   Hollister failed to establish a prima facie
       case of design defect

Hollister's claim of design defect is primarily based upon the tests conducted by Dr. Hall, in which the exemplar fabric and fourteen other fabric samples were dragged across a hot burner at a prescribed rate.  Those tests indicate that the exemplar fabric was significantly more flammable than other fabrics. Hollister presented no evidence, however, as to the availability of alternative fabrics when the shirt was manufactured, the cost of manufacturing the shirt with such fabrics, or the effect of a fabric change upon the wearability, durability, or appearance of the fabric.  Her failure to submit such evidence is similar to the situation in *Owens v. Allis-Chalmers Corp.,* 326 N.W.2d 372, 379 (Mich. 1982), where

the Michigan Supreme Court affirmed the grant of a directed verdict for the defendant when the plaintiff offered no information as to the practicability of a seatbelt on a forklift truck that had overturned on its operator.

In sum, Dr. Hall never presented a "proposed alternative design" with any specificity.  His only recommendation was that the weight of the fabric should have been heavier. Ignoring for the moment his silence on the practicality of such a suggestion, Dr. Hall also admitted "that he could not articulate the exact effect on flammability of the changes" he proposed.   The district court thus properly dismissed Hollister's claims to the extent that they were premised on the shirt's allegedly defective design. *See Zettle v. Handy Mfg. Co.,* 998 F.2d 358, 362 (6th Cir. 1993) (affirming a grant of summary judgment and holding that the plaintiff had failed to present sufficient evidence concerning the effectiveness of a proposed alternative design for a power washer under Michigan law).

    c.   The district court's evaluation of other factors
         was inconsistent with Michigan law

Rather than rest its decision solely on Hollister's failure to meet the district court's formulation of requirements 3 through 6 of Michigan's risk-utility test, the district court also ruled against her on the alternate grounds of severity (requirement 1), foreseeability (requirement 2), and the alleged misuse of the shirt (one of Dayton Hudson's affirmative defenses).  Because the district court's opinion was published, *see* 5 F.Supp. 2d 530 (E.D. Mich. 1998), and because we conclude that its rulings on these alternate grounds were erroneous, we discuss each of them below.

In Parts VI.A.1. & 2. of its opinion, the district court concluded, as a matter of law, that a manufacturer could not have foreseen either the likelihood of the accident suffered by Hollister or the severity of injuries that would result from such an accident.  Hollister, however, presented credible evidence to the contrary.  A 1985 CPSC report sets forth statistics on injuries resulting from apparel catching fire.  The